PEPPER vs. CARTER & MINOR.

1. A purchaser under a judgment, as to conveyances made by the defendant, is regarded as a creditor, and not as a purchaser.

2. A voluntary conveyance by a person in debt, is not, as to subsequent creditors, fraudulent *per se*.

3. A voluntary conveyance of a lot worth only about forty dollars, by a parent at the time in possession of much valuable property, although at the same time embarrassed by debts, will not, as to subsequent creditors be deemed fraudulent, without proof of actual fraud.

ERROR to Pike Circuit Court.

BUCKNER & WELLS, *for Plaintiff*.

I. The execution under which the sale of lot No. 76 was made, was not satisfied by the receipt of Hough.

1. A receipt can be explained by parol evidence. (9 Mo. R., p. 63.) The evidence of the sheriff and McQueen shows that Hough consented that McQueen should have the benefit of hi execution, and although he gave his receipt to the sheriff in full of the execution, it was the un derstanding between the parties that the balance of the execution should be transferred to Mc- Queen, and be collected for his benefit.

2. Hough authorized McQueen to make this arrangement with the sheriff. His subsequent conduct in standing by and seeing the property sold under his execution, and making no objection to the sale, and his subsequent written authority to the clerk to issue the third execution, prove conclusively that this was the arrangement and understanding between him and the sheriff.

3. Hough's execution could not be satisfied without leaving his debt to McQueen unpaid, and the evidence is conclusive that it was satisfied by the sheriff at the time of the settlement.

II. The second point is, whether Carter's conveyance to Minor is fraudulent and void as against existing creditors. It is admitted that Hough's debt was in existence prior to the gift to Minor.

Carter was largely indebted at the time, and previously—frequently sued in the justice's courts —heavy judgments against him long prior and up to the time of Minor's deed—and most, if not all, his property mortgaged; and in the end, he becomes hopelessly insolvent.

Without invoking the authority of the case of Read vs. Livingston, 3 John C. R., 481, and other American and English authorities to the same effect, this deed cannot be sustained against

existing creditors, according to the principles laid down in Hind's lessee vs. Longworth, 6 Cond. R., 277; 1 Story's Eq., secs. 362, 365, &c.; 1 Conn. R., 525; Sexton vs. Wheaton, 8 Wheaton's R., 229.

III. The court erred in excluding the evidence of McQueen as to Carter's pecuniary circumstances previous to the burning of the steam mill and the alleged verbal gift to Minor. It was in rebuttal to the evidence of defendants on that point, and to which no reference by plaintiff's witnesses had been made in their examination. It is insisted that all the evidence of defendants in relation to the verbal gift has no connection with the case. Minor could not have obtained a specific execution of that agreement or gift by Carter. He being a volunteer, ought he to be permitted to enforce it against existing creditors? 2 Story's Equity, p. 113. If Minor could have any claim for his improvements, the pleadings are not in a condition to enable him to obtain such relief. It is affirmative relief, and would require a cross bill. Story's Eq. Pl., p. 413. But he is *particeps fraudis.* His improvements were put on the lot after he had notice in different modes that Carter had no legal right to put his property beyond the reach of his creditors, and that he (Carter) was insolvent. He must have acted *bona fide* before he could claim the benefit of his improvements.


## G. PORTER, *for Defendants.*

1. The judgment was satisfied before the sale (under the execution) was made under which the plaintiff claims, and consequently the sale was void. Garth vs. McCampbell, 10 Mo. R. 154; Reed vs. Pryor & Staats, 7 John., 426. A judgment cannot be satisfied for one purpose and left open for another. 4 Wend., p. 474.

2. Though Carter was indebted when he transferred the lot to Minor, his son-in-law, the circumstances all go to show that there was no fraudulent intent—and though Carter was then indebted, his property was worth at a fair estimate, much more than his debts amounted to, and the lot bore no proportion to the residue of his estate, therefore, according to the doctrine of modern decisions, the gift was not void as against creditors. In view of all the circumstances, the gift being *bona fide* made, should be sustained, unless the court hold that indebtedness *per se* constitutes a substantive ground to avoid a voluntary conveyance, in opposition to which the defendants cite, 1 Story's Eq., secs. 362-3.

3. If the plaintiff be right in his position that no right and title in equity passed to Minor by virtue of the verbal gift and improvements under it, still such gift and improvements are important to repel all imputation of fraud against either, by showing that the transaction had its inception when Carter was in comparatively prosperous circumstances, and beyond all question able to pay all his debts; and to divest Minor of the lot and his improvements thereon, and give it to the plaintiff, would be practically to enable the plaintiff to practice a fraud upon Minor.

4. The evidence of McQueen as to Carter's circumstances in April, 1841, was rightly excluded by the court for the reason given, because it was an attempt to go again into an examination in chief—the same matter having been testified about by plaintiff's witnesses—but if the other points, or either of them, be well taken, this last becomes immaterial to be looked into.


SCOTT, J., *delivered the opinion of the Court.*

This was a bill in chancery filed by Pepper, the complainant, vs. Carter & Minor, the defendants. The bill substantially charges that the complainant on the 12th April, 1844, purchased for ten dollars lot No. 76, in the town of Clarksville, in Pike county, at a sheriff's sale, under

an execution against himself, the defendant, Carter and others, in favor of W. S. Hough. That the sheriff executed to him a deed for the lot.— That previous to said sale, on the 12th September, 1842, the said lot was conveyed by the said defendant Carter, to the said defendant Minor, for the nominal consideration of one dollar. That the said Minor was the son-in-law of the said Carter, and the consideration of the deed was not the pretended sum of one dollar, but natural love and affection.— That at the time of the said conveyance, the said Carter was in failing circumstances, and had encumbered all his property, real and personal, in favor of his creditors. That at the time of the conveyance, the said Carter was hopelessly insolvent and was wholly unable to meet his liabilities. That the conveyance was made to defraud creditors and purchasers, and is therefore void. That Minor is in possession of the said lot and refuses to surrender it. The bill prays that the conveyance to Minor may be cancelled and the title to the lot vested in the complainant, and for general relief.

The answer of the defendant, Carter, does not deny the sale of the lot by the sheriff and the purchase thereof by complainant as stated in the bill, but requires proof thereof. It admits the conveyance of the lot (a vacant one) to Minor, his son-in-law, who resided in Clarksville, for natural love and affection. It denies that respondent considered himself in failing circumstances, or that he could be fairly considered so. It admits, that he was a good deal in debt, and owed W. S. Hough jointly with the complainant and others who composed a partnership, the note on which the judgment was rendered under which the lot was sold, and other debts. It asserts that the respondent had a large amount of property, and a considerable amount of debts due him; that he considered himself at the time of the conveyance of the lot entirely resposible for his debts, and if a reasonable price could have been realized for his property he would have been able to meet all his engagements, but it unfortunately happened that his property was sacrificed at forced sales, it consisting mostly of real estate. All fraud in the conveyance is denied.

Minor, the defendant, files an answer, which is afterwards amended. In relation to the sale of the lot by the sheriff, and the indebtedness of Carter, his father-in-law, its statements are substantially the same as those contained in the answer of his co-defendant. In addition to what is contained in Carter's answer in relation to the conveyance of the lot to Minor, it is asserted that as early as May, 1841, there was a parol gift of the lot to Minor; that at the time of said gift, the lot was wholly un-

improved, and that in the interval between the gift and the conveyance, considerable improvements were made on the lot, and a contract enter-ed into for the building thereon of a two story log house, which has been since completed. That a well was dug, and that the lot as now improved is worth about $440, while at the time of the gift, its value did not exceed forty or fifty dollars.

Replications were filed to the answers.

The only controverted matters between the parties, were the indebtedness of Carter, and the circumstances attending the gift.

It was shown that many judgments; and for considerable amounts, were rendered against Carter in the interval between March, 1841, and October, 1843. Mortgages to secure debts were likewise executed during the same time. There was no incumbrance on lot 76 when it was conveyed, or at least none that was ever asserted. The deed to Minor bore date prior to the judgment under which the lot was sold to Pepper. The date of the debt for which the judgment was rendered, does not appear. The constable of the township in which Carter resided, testified that his circumstances in 1841 and '42 were straitened. That he was often sued, mostly on account of the partnership in the milling business, but that he paid his proportion of the executions. That Carter at the time of the trial of the cause, was insolvent. It was proved that the lot as improved, would rent for $50. All the improvements were made by Minor, which together with the lot were worth between 4 and $500.— That the lot alone was worth at the time of the gift from 40 to $100. That its present value, unimproved, does not exceed thirty dollars. The lot was actually given in April, 1841, just after Minor's marriage with Carter's daughter, although the deed was not executed until about a year afterwards. Shortly after the gift Carter commenced improving the lot, but the house was not completed until after the execution of the deed. Carter owned a great deal of property, was cautious, prudent and economical; was the owner of five-twelfths of a steam mill worth $8000, which was destroyed by fire in July, 1841. The cost of the mill was $18,000. Several witnesses testified to their belief that Carter would not have failed but for the burning of the mill. On hearing, the bill was dismissed, and the complainant sued out his writ of error.

The question as to what will render a voluntary conveyance void as to creditors under the statute, 13 Eliz , from which ours is borrowed, is one, like the question of continuing in possession of property after its sale, and like it, has undergone much discussion, and is the subject of contradictory opinions. Some would make an indebtedness *per se* evi-

dence of fraud against existing creditors. Others would leave every conveyance of the kind to be judged by its own circumstances, and from them infer the existence or non-existence of fraud in each particular transaction. Without determining the question as to existing creditors, we may safely affirm that all the cases will warrant the opinion that a voluntary conveyance as to subsequent creditors, although the party be embarrassed at the time of its execution, is not fraudulent *per se* as to them; but the fact, whether it is fraudulent or not, is to be determined from all the circumstances. I do not say that the fact of indebtedness is not to weigh in the consideration of the question of fraud in such cases, but that it is not conclusive. Chancellor Kent, who maintains the most rigid doctrine with regard to the effect of voluntary conveyances against creditors, after a full examination of the authorities, concedes, that actual fraud, or fraud in fact, must be proved, in order to set aside a prior voluntary conveyance at the suit of subsequent creditors. It is needless to enter into an examination of the cases to maintain this doctrine; it has been done already, and by those whose capacity cannot be questioned. Read vs. Livingston, 3 John. C. 501; Story's Eq. 2 vol., sec. 355 to 366; Sexton vs. Wheaton, 8 Wheat. 229–30; Ridgway vs. Underwood, 4 Wash. C. C. Rep. 137. There is nothing in the case of Hind's lessee vs. Longworth, 11 Wheat. 199, relied on by the counsel of the complainant, that impugns this doctrine. That case supports it. The remarks towards its close in relation to the indebtedness of the donor, were made in reference to existing creditors. The law being so, this case is determined. It does not appear, that the debt under which the lot in controversy was sold, was contracted prior to the gift, or even to the execution of the conveyance. A purchaser under the judgment of a creditor is regarded as a creditor, not as a purchaser under the statute of 13 Eliz. It was not pretended that the conveyance of the lot in dispute was actually fraudulent. The sole ground on which that imputation was based, was the embarrassment of Carter at the date of the gift. An examination of the evidence in the case, the large property of Carter, and the inconsiderableness of the gift, and his subsequent misfortunes, will satisfy any rational mind that there was no actual fraud in this transaction. Indeed, I was disposed to put this case in the category of those in which the maxim applies *de minimis non curat lex.* A father, the owner of a large real estate, embarrassed.it is true, makes a gift of a lot not worth more than forty or fifty dollars, for love and affection to his son-in-law, just after his marriage; the value of the lot is increased ten fold by the labor and improvements of the donee, and a subsequent

creditor would take the lot with all its improvements and subject it to the payment of his debts! A parent, whose fortune consists mostly of live stock, makes a daughter, on her marriage, a present of a female colt— (and the condition in life of many of our people naturally suggests this illustration)—by care and attention, a number of horses are raised from this humble beginning, who would bear' to see these taken to satisfy a subsequent creditor, when there is no pretence of fraud in the gift, although the parent may have been indebted to others at the time? There being no actual fraud, on what principle would the creditor take more than the value received by the voluntary grantee?

Something has been said in reference to the bearing of the statute of frauds on this controversy. That the parol gift of the lot in 1841, would not, under the facts of this case, have been specifically enforced by a court of chancery. It is not perceived, what this has to do with the cause, as Carter has actually conveyed the lot, as he was in justice bound to do, and that too, before there was any lien or incumbrance created by the judgment under which the complainant claims. But I imagine, that where there is such a part performance of a parol contract as places the party performing it, in a situation which is a fraud upon him, unless the agreement is executed, equity under such circumstances, will not permit a party to protect himself from executing the contract, by pleading that it was not in writing. A statute that was made to prevent fraud, will not be perverted to its protection and encouragement. Clinan vs. Cooke, 1 Schoales & Lefroy, 41.

The other Judges concurring, the decree will be affirmed.