## WALLACE *v.* PENFIELD.

1. A deed which a man caused to be made to his wife, for lands whereon they resided, will not be set aside at the instance of his subsequent creditors, it appearing that at its date, and when he paid for the lands and the improvements which he afterwards erected thereon, his property largely exceeded his debts, and that there was no intent to defraud.

2. A misdescription of the lands will not defeat the wife's right to them, to the exclusion of those creditors, there being no doubt as to the lands intended to be conveyed.

APPEAL from the Circuit Court of the United States for the Eastern District of Missouri.

The First National Bank of Quincy, Illinois, recovered against William Y. Williams and others, in the Circuit Court of Lewis County, Missouri, three judgments, — one, on the 10th of May, 1873, upon their note dated June 19, 1871; and the others, on the 5th of March, 1874, upon their notes dated, respectively, June 3, July 3, and July 19, 1871.

The La Grange Savings Bank of Missouri recovered, May 12, 1873, in the same court, against him and others, two judgments, upon their two notes, — one for $1,635.25, dated Aug. 14, 1871; the other, upon a note, dated Feb. 1, 1872.

Upon these various judgments executions were issued, and levied upon a tract of land in that county, containing forty-two acres, which Williams and his family occupied as their residence. The legal title to it was, at that time, in his wife, it having been conveyed to her by deed dated Feb. 11, 1868, and duly filed for record on the 24th of that month. The deed did not accurately describe the metes and bounds of the property intended to be conveyed, and, in order to correct the description, another deed was made to her on the 13th of December,

1871, and duly filed for record on the 6th of the succeeding month.   The property so levied on, with all the improvements thereon, was sold at public auction, and Uri S. Penfield became the purchaser, at the sum of twenty-five dollars, " in trust for the use and benefit of the execution creditors."   It was by the sheriff conveyed to him accordingly.   As to the balance due upon the judgments, the executions were returned unsatisfied.

This suit was commenced on the 30th of June, 1875.   It proceeds upon these grounds: that Williams purchased and paid for the property with his own means, and caused the title to be placed in the name of his wife, with the fraudulent intent to hinder and delay his creditors; that after the conveyance, he being insolvent, and in expectation of contracting future debts, and with intent to hinder, delay, and defraud his creditors, existing and future, and for the purpose of placing his means beyond their reach, did, to their injury, and with her knowledge, consent, and approval, make, solely by his own means, valuable, permanent, and expensive improvements on the land; that she accepted the conveyance, with knowledge and notice of the fraud imputed to him, and confederated with him to cheat and hinder his creditors by withholding from them as well the land as all the moneys invested in improving it.

The prayer of the bill is that the conveyance to her be declared inoperative against his creditors; that the title to the land be vested in Penfield, in trust for the execution creditors, and the possession thereof adjudged to him for their use and benefit; and that if the deed cannot be declared inoperative, as to creditors, then that the amount expended by Williams in improving the land be declared a charge and an incumbrance thereon in their favor.

The material allegations of the bill are denied in the answer of Williams and wife.

The Circuit Court, upon final hearing, decreed that all the right, title, and interest of Williams and wife in the land be, without further convey  .ce, vested in Penfield in trust for the banks, and that possession be forthwith delivered to him.   From that decree this appeal was taken.

*Mr. Eppa Hunton* and *Mr. W. H. Hatch* for the appellants.

*Mr. John D. S. Dryden, contra.*

MR. JUSTICE HARLAN, after stating the facts, delivered the opinion of the court.

A very careful scrutiny of the record has brought our minds to the conclusion that the decree below cannot be sustained. The evidence clearly establishes that Williams, with his own means, purchased the land in question with the intention of immediately improving it and making it the permanent residence of himself and family. Indeed, the fact is substantially admitted in the answer of himself and wife. But fraud is not shown upon his part, either in causing the conveyance to be made to her, or in using his means, to the extent that he did, in improving the land. The facts are entirely consistent with an honest purpose to deal fairly with any creditors he then had, or might thereafter have in the ordinary course of his business. It is true that he was somewhat indebted at the time of this voluntary settlement upon his wife, but his indebtedness was not such in amount or character as, taking into consideration the value of his other property interests, rendered it unjust to creditors, existing or future, that he should, out of his income or estate, provide a home for his family by improving this tract. When it was conveyed to her, as well as during all the period when he improved it by the erection of a dwelling and other houses thereon, he had, according to the weight of the evidence, property which his creditors could reach, exceeding, in value, all his existing indebtedness by several thousand dollars. He was engaged in active business, with fair prospects, good credit, and, as we may infer from the record, unsullied reputation. His indebtedness existing at the time of the settlement upon the wife, as well as that which arose during the period of the improvements, was subsequently, and without unreasonable delay, fully discharged by him. Commenced in 1868, they were all, with trifling exceptions, completed and paid for before the close of the summer of 1869. So far as the record discloses, no creditor, who was such when the settlement was made or the improvements were going on, was materially hindered by the withdrawal by Williams, from his means or business, of the sums necessary to pay for the land and improvements. Those who seek, in this suit, to impeach the original settlement, or to reach the means he invested in improving his wife's land,

became his creditors some time after the improvements (with slight exceptions not worth mentioning) had been made and paid for. If they trusted him in the belief that he owned the land, it was negligent in them so to do, for the conveyance of Feb. 11, 1868, duly acknowledged, was filed for record within a few days after its execution. The circumstance that the original deed did not give an accurate description of the land intended to be conveyed ought not to defeat the original settlement upon her, inasmuch as the description could leave no one in serious doubt that the land intended to be conveyed was that now in dispute. There is no intimation in the pleadings that the banks supposed, when contracting with him, or accepting from others commercial paper upon which his name appeared, that the deed of Feb. 11, 1868, described land other than that upon which he, after that date, resided. On the contrary, the amended bill proceeds, in part, upon the ground, distinctly stated, that the land intended to be conveyed by that deed is that now in dispute, and that the only purpose of the deed of Dec. 13, 1871, was to correct the erroneous description in the deed of 1868.

An effort is made to show that some of the debts, evidenced by the notes upon which the banks obtained judgment, existed when the conveyance of 1868 was executed or the improvements in question were made. But the evidence furnishes no basis for such a contention, except as to the note for $1,635.25, executed Aug. 14, 1871, held by the La Grange Savings Bank. As to that note, the president of the bank states that in it was merged a prior note for $800 or $1,000, given by the parties last named in 1866 or 1867. But his evidence shows that he is not at all clear or positive in his recollections upon the subject; and, according to the decided preponderance of testimony, Williams was not a party to the note, which, it is claimed, was merged in that of Aug. 14, 1871. The proof, upon this point, renders it quite certain that no part of the debt evidenced by that note existed against Williams, until, as surety for Simpson, he signed that note.

The principles of law which must determine the rights of the parties are well established by the decisions of the Supreme Court of Missouri. In *Pepper* v. *Carter*, 11 Mo. 540, that court,

after remarking that the question as to what would render a voluntary conveyance void as to creditors under the statute of Elizabeth, from which the Missouri statute was borrowed, had undergone much discussion, and been the subject of contradictory opinions, said : "Some would make an indebtedness *per se* evidence of fraud against existing creditors.   Others would leave every conveyance of the kind to be judged by its own circumstances, and from them infer the existence or non-existence of fraud in each particular transaction.   Without determining the question as to existing creditors, we may safely affirm that all the cases will warrant the opinion that a voluntary conveyance as to subsequent creditors, although the party be embarrassed at the time of its execution, is not fraudulent *per se* as to them; but the fact, whether it is fraudulent or not, is to be determined from all the circumstances.   I do not say that the fact of indebtedness is not to weigh in the consideration of the question of fraud in such cases, but that it is not conclusive." In the later case of *Payne* v. *Stanton*, 59 Mo. 158, the same court, while quoting approvingly the language just cited from *Pepper* v. *Carter*, said that the "doctrine is well settled that a voluntary conveyance by a person in debt is not, as to subsequent creditors, fraudulent *per se*. To make it fraudulent, as to subsequent creditors, there must be proof of actual or intentional fraud.   As to creditors existing at the time, if the effect and operation of the conveyance are to hinder or defraud them, it may, as to them, be justly regarded as invalid; but no such reason can be urged in behalf of those who become creditors afterwards."

These decisions control the present case.   Neither the conveyance to the wife nor the withdrawal of the husband's means from his business for the purpose of improving the land settled upon her, had the effect and operation to hinder or defraud his then existing creditors.   Nor does the evidence justify the conclusion that the conveyance was executed, or the improvements made, with an intent to hinder or defraud either existing or subsequent creditors.   Giving full weight to all the circumstances, there is no reason to impute fraud to the husband.

*Decree reversed with directions to dismiss the bill.*