DORRANCE v. McALESTER et al.

(Circuit Court of Appeals, Eighth Circuit. January 3, 1899.)

No. 1,062.

FRAUDULENT CONVEYANCE—PURCHASE BY CREDITOR—EXTENT OF PROTECTION.
When a creditor purchases more goods from his failing debtor than are necessary to satisfy his claim, and for the excess pays cash or executes negotiable paper, he places himself in the same position as an ordinary purchaser having no claim to secure, and becomes a participant in the fraud of his vendee, if he is aware, or has reasonable grounds to believe, that his vendee contemplates a fraud.

In Error to the United States Court of Appeals in the Indian Territory.

J. W. Hocker and Zol J. Woods, for plaintiff in error.

S. N. Taylor (James E. Humphrey, Henry M. Furman, C. L. Herbert, and Jesse H. Hill, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This case comes, on a writ of error, from the United States court of appeals in the Indian Territory, the record made by the trial court having once been reviewed and its action affirmed. 45 S. W. 141. The case grew out of the levy of a writ of attachment by J. J. McAlester, marshal of the United States court in the Indian Territory, and one of the defendants in error, on a stock of groceries situated in the town of Purcell, in said territory. The goods were levied on as the property of M. W. Oziah, at the instance of the firm of Nix, Halsell & Co., the other defendants in error. After the levy of the writ of attachment, Mary E. Dorrance, the plaintiff in error, who was a half sister of said Oziah, the attached debtor, brought an action against McAlester as for an alleged wrongful seizure and conversion of the goods, claiming that she had purchased them from her brother before the attachment was levied. It is the latter case which is before us for review.

In the trial court it was claimed by the defendants that the alleged sale of the stock of goods in controversy by Oziah to his sister, Mary E. Dorrance, was made and contrived between them with intent on their part to hinder, delay, and defraud the creditors of the vendor, and to this issue all of the testimony was addressed. An inspection of the record shows that there was abundant evidence tending to prove that the vendor contemplated a fraud upon his creditors, but the strain of the case appears to have been whether Mrs. Dorrance was a participant in the fraud, or a purchaser in good faith for a valuable consideration, and therefore entitled to protection. Under instructions of the trial court which are challenged in this court only in one respect, the jury returned a verdict in favor of the defendants below, finding that the sale was fraudulent and void both as respects the vendor and Mrs. Dorrance, the vendee.

On the trial of the case the plaintiff testified, in substance, that she was surety for her brother on a note for $500; that, finding him involved in financial difficulties, she bought his entire stock of goods and store fixtures to save herself from loss, paying him therefor the sum of $600 in cash, and agreeing to assume the note for $500, which she had signed as a surety, and to discharge another note for $130, which her brother owed to a third party. In other words, the plaintiff's testimony showed that the purchase price paid for the stock of goods in controversy was $1,230, of which sum $600 was paid in money, and the residue consisted of debts of the insolvent vendor, which she at the time agreed to assume and pay. In view of this testimony, the trial court charged the jury as follows:

"If, therefore, she [Mrs. Dorrance] knew he [Oziah] was insolvent or in failing circumstances, and knew of his purpose to defraud his creditors, and participated in the transaction, she could not recover in this case. * * *

"To make void a sale by a failing debtor to a creditor actual notice to the creditor of the fraudulent intent [of] the vendor is not necessary if the facts and circumstances within his knowledge are sufficient to put a person of common sagacity upon inquiry, and the use of reasonable diligence would lead to discovery of the fraudulent purposes of the vendor, and, if he fails to make inquiry, he will be charged with notice of the fraudulent intent.

"No purchaser thus put upon inquiry has a right to remain willfully igno-

rant of the facts within his reach. It is not sufficient for his protection to show that he was a purchaser for value. He must also be a bona fide purchaser; a purchaser in good faith; a purchaser without notice of the fraudulent intention on the part of the party from whom he purchases.

"*By aiding a debtor to convert his property into money or promissory notes which can be easily concealed from the creditors, and placed beyond their reach, with notice, actual or constructive, that he is doing so to defraud his creditors, the person so purchasing participates in the fraud of the debtor, by assisting him in carrying out his fraudulent purposes.*

"A creditor may purchase goods of an insolvent or failing debtor in satisfaction of his debt, and it matters not whether or not he knew of the fraudulent intent of the debtor as to other creditors, so the purchasing creditor does not aid him in defeating his other creditors; but the purchasing creditor must have a bona fide debt, and must purchase the goods at a fair price, and to the extent only and in satisfaction of his debt."

Counsel for the plaintiff requested the trial court to qualify that paragraph of the charge which we have placed in italics by making, in substance, the following statement: That the fact that one who buys goods to save an honest debt due to him from the seller may know of the latter's intent to defraud other creditors does not invalidate the sale if he pays a fair price, and buys only enough to satisfy his debt, *unless necessity compels the purchase of more.* This request was denied, an exception was saved, and the exception in question is the only one which is preserved by the record in such a form that it can be noticed by this court.

If the charge of the trial court had been modified as requested, we think that it would have been erroneous, and that the exception is therefore without merit. A creditor may doubtless take goods or other property from a failing debtor in payment or as security for an honest debt, and the transaction is not fraudulent as to the creditor although he is aware or has reasonable cause to believe that the debtor intends to defraud his other creditors, provided the property is received in good faith, in satisfaction of or as security for the creditor's claim, and is not taken or held in secret trust for the debtor, or with a view of aiding him in the perpetration of a fraud. The right of a creditor to receive payment of an honest debt in money, or in property at a fair and reasonable price, is unquestionable. Shelley v. Boothe, 73 Mo. 74. It is quite a different matter, however, when a creditor, besides taking a certain quantity of goods in payment of his claim, purchases and pays cash for an additional quantity, and does so with knowledge, actual or constructive, that his debtor contemplates a fraud on his other creditors, and that the purchase in question will aid in the consummation of the scheme. Even if a creditor cannot obtain goods in satisfaction of his claim in any other way than by purchasing an additional quantity, and paying therefor in cash, yet the law will not permit him to become a party to a fraud to save or secure his own claim. No necessity is ever so great as to justify a person in aiding another to perpetrate a fraud. While there may be some cases which would lend support to a contrary view, yet the great weight of reason and authority sustains the contention that, when a creditor purchases more property from his failing debtor than is necessary to satisfy his claim, and, for the excess of goods so purchased, pays cash or executes negotiable paper, he places himself in the category of an or-

dinary purchaser, who has no claim to secure, and becomes a participant in the fraud of his vendor, if he is aware, or has reasonable grounds to believe, that his vendor contemplates a fraud. Harris v. Russell, 93 Ala. 59, 67, 9 South. 541; Black v. Vaughan, 70 Tex. 47, 7 S. W. 604; Sanger v. Colbert, 84 Tex. 668, 670, 19 S. W. 863; McVeagh v. Baxter, 82 Mo. 518; Hart v. Sandy, 39 W. Va. 644, 657, 20 S. E. 665; Allen v. Stingel, 95 Mich. 195, 54 N. W. 880; Roeber v. Bowe, 26 Hun, 554, 558; Hanchett v. Goetz, 25 Ill. App. 445; Seger's Sons v. Thomas Bros., 107 Mo. 635, 641, 18 S. W. 33.

If the plaintiff was aware or had reasonable ground to believe that Oziah intended to defraud his other creditors, as the jury appear to have found, she had no right to purchase his entire stock in trade, which was of the confessed value of over $1,200, to save herself from liability on the note for $500 which she had executed, even though her debtor did refuse to protect her from liability on any other terms. Having timely notice of the intended fraud, she could doubtless have caused an attachment to be levied upon the debtor's stock in trade to secure the indebtedness for which she had become his surety; but, whether this remedy was or was not available, the purchase by her made was not justifiable, on the ground of necessity, and the trial court would have erred if it had permitted the jury to so find.

Several objections were made to the introduction of evidence, but the errors of this class are not well assigned, in conformity with rule 11 of this court, and an examination of the alleged errors shows that they are, in any event, unimportant.

The judgment of the United States court in the Indian Territory for the Third judicial division, and the judgment of the United States court of appeals in the Indian Territory, are each hereby affirmed.