## SAVAGE v. SAVAGE.

(Circuit Court of Appeals, Fourth Circuit. November 9, 1905.)

### No. 591.

1. BANKRUPTCY—VALIDITY OF LIEN—MORTGAGE TO SECURE ALIMONY.

Where a decree for alimony in favor of a divorced wife was a lien upon all of the real estate of the husband, it was competent for the parties by contract, in consideration of the releasing of such lien on other property, to convert the alimony into an annuity for life secured by a trust deed on specific property duly recorded, and the validity of the lien of such deed was not affected by a subsequent remarriage of the parties, and it may be enforced by her after the husband's bankruptcy, where by the state statute the wife had the right to acquire and hold property as if she were unmarried.

2. SAME—GIFT TO WIFE.

A deed of property, made by a husband to his wife by way of gift at a time when he was not indebted, and which was duly recorded, is valid as against his subsequent creditors in bankruptcy.

3. SAME—SALE OF REAL ESTATE—RELEASE OF DOWER RIGHT.

It is proper, and generally desirable, to sell the real estate of a bankrupt free from his wife's inchoate right of dower, with her consent, and to compensate her for such release by a fair allowance out of the proceeds.

4. INTEREST—ARREARS OF ANNUITY.

Interest should not be allowed, on arrears of an annuity due from a bankrupt to his wife under an antenuptial contract, and secured by a lien on property, where the contract makes no provision therefor.

Pritchard, Circuit Judge, dissenting.

Petition for Revision of Proceedings in the District Court of the United States for the Western District of Virginia, at Harrisonburg, in Bankruptcy.

On February 19, 1904, Ralph Savage was adjudicated a bankrupt; his largest creditor being his brother, the petitioner, Joseph H. Savage. His wife, M. Adah Savage, formerly M. Adah Seabright, claimed to be a secured creditor. She was first married to the bankrupt in 1895. On March 13, 1897, she was divorced from him and allowed to take her maiden name of Seabright by a decree of the circuit court of Frederick county, Va. The decree required Ralph Savage to pay her $400 a year alimony, payable in monthly sums of $33.33 on the 13th of each month, and these sums were secured upon the real estate of Ralph Savage, situate in the city of Winchester, Va. On March 8, 1898, Ralph Savage executed a deed of trust, conveying to R. T. Barton, as trustee, a property on Main street, in Winchester, Va. This deed, which was also signed and acknowledged by M. Adah Seabright, recites that the decree for alimony at the rate of $400 per year was a lien upon all the grantor's real estate, and recites that by a bond that day executed by Ralph Savage to M. Adah Seabright he had bound himself to pay to her during her lifetime the sum of $400 a year in monthly payments of $33.33 each, and had agreed to secure the payment thereof by a deed of trust of the Main street property, and in consideration thereof said M. Adah Seabright had agreed to wholly release the lien of her decree, and did "unite in the deed for the purpose of wholly releasing the said Ralph Savage from the obligation of the decree to pay alimony aforesaid, and his property from the lien of the same, and the said Ralph Savage on his part, in fulfillment of his contract, doth hereby grant and convey unto R. T. Barton, trustee," etc. The deed then provides that, in case of default in payment of $33.33 per month, the trustee shall sell the property at public auction, and out of the proceeds the trustee shall invest so much of the proceeds as shall be sufficient to produce to the said M. Adah Seabright $400 a year, or else said trustee shall pay over to said M. Adah Seabright, as she may elect, and to be her absolute property out of said proceeds, a sum of money equal to the commuted value of the annuity at the date of sale. In either event, however, the residue to be paid by the said trustee to the said Ralph Savage. The deed of trust was acknowledged by Ralph Savage on March 9, and by M. Adah Seabright on March 10, and recorded March 22, 1898. On March 31, 1898, Ralph Savage was remarried to the said M. Adah Seabright. On June 19, 1899, Ralph Savage conveyed to his wife a house on Washington street, in the city of Winchester, renting for $24 per month, which rent she has since that time collected. This deed was acknowledged and duly recorded on June 26, 1899.

On March 12, 1904, Mrs. Savage, and Mr. Barton as trustee, filed their petition in the bankruptcy proceedings, reciting the foregoing facts, alleging that the annuity of $400 a year, secured to her by the deed of trust of March 8, 1898, was in arrears and unpaid, and praying that the court would permit the trustee under its supervision to sell the Main street property and pay the installments in arrear and to pay to her the commuted value of the annuity for her life, and praying, also, that she be allowed out of any other real estate of the bankrupt sold by the trustee of the bankrupt the commuted value of her contingent right of dower. Joseph H. Savage and other creditors of the bankrupt answered this petition, denying that M. Adah Savage was entitled to any lien for the payment of any sum to her, or any right of dower or any claim whatever against the estate of the bankrupt. The matter went to the referee, who gave notice to all the creditors, and, having heard the testimony offered and arguments of counsel, made his report of his findings and conclusions. The referee held, that by virtue of the deed of trust of March 8, 1898,

Mrs. M. Adah Savage had a first lien on the Main street property for the unpaid installments due her of the annuity secured to her, amounting to $2,433.33, with interest on each installment as it became due. He held that Mrs. Savage was entitled to the commuted value of the annuity according to the Virginia statute at her age of 27, amounting to $5,310, and that it was secured by the deed of trust and to be paid out of the proceeds of the sale of the Main street property. He further held that, as to the other real property owned by the bankrupt, Mrs. Savage was entitled to her contingent right of dower, but that, as she had consented by a writing filed in the proceedings that the real estate might be sold free from her right of dower, she should be allowed, when sale was made of said real estate, the commuted value of her contingent right of dower. It was ordered by the referee that she might proceed to enforce the lien given for her benefit by the deed of trust by sale of the Main street property, and the order authorized Mr. R. T. Barton, as trustee named in the deed, and Mr. M. M. Lynch, the trustee in bankruptcy, to make the sale at public auction. The referee found that at the time of making the deed of trust of the Main street property, and at the time of making the deed of gift to his wife of the Washington street property, the bankrupt owed only a few small personal debts, which had been paid, but that he had never paid to his wife any installments of the annuity. The creditor, Joseph H. Turner, desiring a review of the orders of the referee by the District Judge, duly filed his petition for review, and the referee certified to the District Judge the questions presented, with a summary of his findings and his order. The questions presented for review were whether M. Adah Savage was rightly allowed the arrears of annuity and interest thereon; whether it was proper to allow her as the commuted value of the annuity the sum of $5,310; whether it was proper to declare these sums a lien on the Main street property and to allow the lien to be enforced by sale; whether it was proper to direct the real estate of the bankrupt to be sold clear of the wife's contingent dower. The petition for review was heard by the District Judge, and the rulings of the referee were affirmed and approved. Joseph H. Savage, feeling himself aggrieved, has petitioned this court to review and revise said proceedings in matter of law.

R. E. Byrd (Holmes Conrad, on the brief), for petitioner.

R. T. Barton, for respondent.

Before PRITCHARD, Circuit Judge, and MORRIS and PURNELL, District Judges.

MORRIS, District Judge (after stating the facts). The deed of trust of March 8, 1898, between Ralph Savage, of the first part, R. T. Barton, trustee, of the second part, and M. Adah Seabright, of the third part, recites the obligation of Ralph Savage to pay to M. Adah Seabright as alimony $400 a year in monthly installments of $33.33, which had been decreed in her favor by a decree dissolving a marriage between herself and Ralph Savage and granting her alimony, and recites that the decree had been recognized as a lien on his real estate. It further recites that she had agreed to release his other property from the lien of the decree in consideration of the grant to the trustee of the specific property described in the deed as security for the payment of the said yearly sum of $400 for life. The deed provides that, upon default in payment of the debt secured by the deed of trust or of any installment, it should be the duty of the trustee to sell the property and out of the proceeds to invest so much of the proceeds as would be sufficient to produce to the said M. Adah Seabright $400 a year, or else, as she might elect, to pay to her as her absolute property the commuted value of the annuity at the date of sale. The

deed in very clear terms expresses the contract between the parties. She released the rest of his property. He secured to her $400 a year for life by a specific lien on the Main street property, or, in default of payment, at her election, the commuted value of that annuity during her life. It was a valid agreement, made upon a valuable consideration, and there were then no existing creditors. By agreement of the parties the $400 a year ceased to be alimony and subject to the control of the court which decreed it, and became a fixed annuity for life, and its payment secured by an unqualified deed of trust duly executed and placed upon record March 22, 1898.

On March 31, 1898, the parties were remarried, and it is urged, in support of the petition to revise, that the marriage invalidated this annuity and the deed to secure it, for the reason that the $400 a year had originally been alimony, and that by the remarriage the consideration for its payment failed. Obviously, when the deed was executed, the parties were competent to make any contract with respect to the $400 a year they might agree upon. If, for the sake of relieving other property from liability as recited in the deed, or for any other reason, Savage chose to agree to convert alimony into a contractual obligation to pay an annuity for life, there was nothing unlawful, or immoral, or against public policy in the transaction. The parties made the agreement and evidenced it by a formal instrument of writing, which they recorded, and by the agreement the $400 a year became an annuity subject to no contingency except duration of her life. They both testified in these proceedings that the deed of trust was made in contemplation of marriage and as a marriage settlement, and to prevent the release of the claim for alimony which would have resulted from the proposed marriage, had no such contract been made. This is not the consideration recited in the deed; but as the deed of trust was recorded on March 22d, and the parties were remarried on March 31st, it appears highly probable that it was made in contemplation of marriage. For such a settlement the marriage is a sufficient consideration to support the deed. It is regarded in law as a consideration of the very highest value. Prewit v. Wilson, 103 U. S. 22-24, 26 L. Ed. 360. In either aspect, it cannot be successfully contended that the consideration for the deed has failed, or is affected by the subsequent marriage.

By the Virginia Code it is enacted that a married woman shall have the right to acquire, hold, use, and dispose of property as if she were unmarried. Under such an enactment, if the wife is a creditor of her husband, and if the debt is bona fide and established by proof, she is to be neither postponed nor preferred to other creditors solely because of their marital relation. Bean v. Patterson, 122 U. S. 496-500, 7 Sup. Ct. 1298, 30 L. Ed. 1126. Here we have a covenant by the husband to pay, which he has not performed, and a recorded lien on land to secure performance. It follows that monthly payments were due from the grantor to the cestui que trust, and, as they were not paid, she is entitled to the arrears and entitled to resort to the land for payment. The bond mentioned in the deed was for $3,000, but the real agreement was to pay $400 a year, and the deed provides ex-

plicitly that the commuted value is to be paid to the beneficiary, if she so elects, in case of a sale after default.

With regard to the deed of June 19, 1899, conveying the Washington street property, that was a deed of gift from husband to wife, duly recorded, and also made at a time when there were no creditors to be injured by it. It is urged on behalf of the petitioner for revision that this conveyance should be regarded as having paid off and discharged the sums secured to the wife by the deed of trust, but this is a mere assumption, without a word of proof to sustain it. The testimony of both husband and wife is that it was a gift from him to her as a provision for the future comfort of herself and children, and such a gift he had an undoubted right to make to her. Wallace v. Penfield, 106 U. S. 260–262, 1 Sup. Ct. 216, 27 L. Ed. 147. And even if the testimony of the husband and wife should be held to be within the restriction of Va. Code, 1904, p. 1770, § 3346a, and should be excluded as incompetent in such a controversy as this, the case is without any testimony to show that the conveyance was a payment, and as the conveyance from husband to wife requires no consideration other than the marital relation to support it, there is no presumption that it was a payment. Jackson v. Jackson, 91 U. S. 122–125, 23 L. Ed. 258. A gift from husband to wife, not made in prejudice of creditors, evidenced by a deed duly executed and recorded, is valid, and needs no consideration other than the marital relation to support it. Sexton v. Wheaton and Wife, 8 Wheat. 229, 5 L. Ed. 603; Jones v. Clifton, 101 U. S. 225–228, 25 L. Ed. 908; Bean v. Patterson, 122 U. S. 499, 7 Sup. Ct. 1298, 30 L. Ed. 1126.

With regard to the objection urged against the order to sell the bankrupt's remaining real estate free from the wife's contingent right of dower, it is sufficient to say that it is nearly always desirable, in making sale of a bankrupt's real estate, if the wife will consent, to sell free from her inchoate right of dower, and to compensate her by a fair allowance out of the proceeds for her release of that right. It is common practice to do so when it is possible, and we think the practice is to be approved, as it gives the purchaser an unincumbered title, and ordinarily results in advantage to creditors by obtaining a better price for a clear title than can be obtained for property the title to which is clouded by such a possible incumbrance.

There remains the question whether it was proper to allow interest upon each installment of the annuity from the date it fell due, as was done by the referee. In A. & E. Encyclopedia of Law, vol. 2, p. 407, this statement is found:

"The cases are somewhat conflicting upon the question of the allowance of interest on arrears of annuities. Generally the English courts seem to be inclined against it, and the courts of the United States in favor of it."

In Adams v. Adams, 10 Leigh (Va.) 527–533, it is stated to be the general rule that annuities do not bear interest. In Isenhart v. Brown, 2 Edw. Ch. (N. Y.) 341–347, it is stated that the weight of authority is against allowing interest upon arrears of annuity.

In Laura Jane v. Hagen, 10 Humph. (Tenn.) 332–336, it is stated that whether interest shall be allowed on an annuity must depend upon the circumstances of each case, and is not a matter of positive law.

In cases of annuities, where there is no express direction or contract for interest, we think it may be fairly said to be discretionary. Mower v. Sanford, 63 L. R. A. 629, note. If interest be discretionary, this is clearly a case in which that discretion should be exercised against allowing it. During the six years in which the arrears were accumulating the wife was living with her husband, and was being supported and maintained by him. It was by his default that the installments were not paid to her; but to impose the addition of interest, which the deed of trust does not provide for and which is not part of the contract, would not be to put a penalty upon him for his default, but to deplete the residue of the proceeds of the property which is to go to creditors. Wormley's Est., 137 Pa. 101–112, 20 Atl. 621.

As to all the orders of the district court, except the order allowing interest on the arrears of the annuity, the petition for revision is dismissed, and as to the said allowance of interest the petition to revise is sustained. It is so ordered, and that each party pay his and her own costs in this court.

PRITCHARD, Circuit Judge (dissenting). I am unable to concur in the conclusion of the court in regard to the effect of the deed of trust which was executed by Ralph Savage to his wife, the respondent, on the 8th day of March, 1898. It is held that this instrument constitutes a valid agreement upon a valuable consideration. In considering this question we are confronted with a proposition which is serious in its nature and one that is worthy of careful consideration. The deed of trust was based upon the consideration that the respondent should release the liens existing upon the property of Ralph Savage, which had been created by virtue of the decree of alimony, and, among other things, it was provided in the deed of trust that the husband should comply with the provisions of the decree which required him to pay annually to the respondent the sum of $400. The inquiry naturally arises as to what were the reasons that prompted Ralph Savage to execute the deed of trust in question. To this proposition there can be but one answer, and that is that such instrument was executed for the purpose of freeing his property from existing liens and also to guarantee the performance on his part of the conditions contained in the decree, to wit, the proper maintenance and support of his wife.

When one marries he assumes a moral obligation, which, among other things, involves the duty of maintaining and providing for his wife; and while this is not a contract to support the wife, in the ordinary acceptation of the term, the duty enjoined is of such a character that the courts will by fine or imprisonment enforce its requirements. This is an obligation which is never imposed, except in cases where it is made to appear that the husband is not performing the duty thus enjoined upon him. In this instance it appears that Ralph Savage was not maintaining and supporting his wife in the manner in which he was in duty bound to do, and for this and other reasons the bonds of matrimony between the parties were dissolved, and accordingly a decree was entered requiring him to pay to the respondent during her

life time the sum of $400 per annum; and subsequent thereto and in pursuance of such decree an agreement was entered into between the parties by which the husband executed a deed of trust, which provided that the property described therein should be conveyed to a trustee for the purpose of securing the payment of the annuities hereinbefore mentioned. This contract was based upon the consideration heretofore mentioned, and upon the theory that the parties were to live separate and apart and that the husband should be required to maintain and support his wife in the same manner as when they lived together.

Within a short time after the execution of the deed of trust the parties became reconciled and were remarried, and the husband again assumed the relation to his wife which he had sustained before they were divorced, and it appears from the record that he provided suitable support and maintenance for her from that time on. In other words, when the parties remarried, the husband voluntarily undertook to do that which the court had decreed he should do at a time when he was divorced from his wife. The agreement which he had entered into with his wife prior to their remarriage was in the nature of an executory contract, and, when the parties married the second time, the reasons upon which the decree and the contract were based ceased to exist. The husband, realizing that his entire real property was subject to this decree, he and his wife, who became sui juris by the decree of divorce, made a contract which, instead of being a lien on all of the husband's property to secure the payment of the annuities mentioned in the decree of the court, provided that it should be a lien only on certain portions of it, which portions should be placed in the hands of a trustee who should hold the same merely as a security. When the husband and wife remarried, the new contract to marry and its consummation constituted a waiver on the part of the wife of all annuities secured to her, and thus discharged the property placed in the hands of the trustee of any lien; for, as the annuities thus ceased to exist or be enforceable, of course the securities were no longer valid.

In the case of Boyd v. Olvey, 82 Ind. 304, it is held:

"It may be laid down as a general rule that, where an estate is devised to trustees for particular purposes, the legal estate is vested in them as long as the execution of the trust requires it, and no longer, and therefore, as soon as the trusts are satisfied, it will vest in the person beneficially entitled to it."

When the parties remarried the wife became reinvested with the inchoate right of dower in all of the real property which the husband possessed at that time—that which was included in the deed of trust, as well as that portion of his property which had been freed from the lien created by the decree for alimony existing at the time the deed of trust was executed. While the act of remarriage resulted in reinvesting the husband with the title to the property conveyed in the deed of trust, on the other hand, it had the effect of reinvesting the wife with the right of dower in all of the real estate which the husband owned at the date of their remarriage. Inasmuch as the proposition that by the remarriage the wife was reinvested with her dower right in all property still owned by the husband and which had been owned by him at the time of the divorce, as well as invested with a dower right

in any additional property acquired by the husband since the date of the divorce, is undeniable, to hold that after the remarriage she still retained her rights under the deed of trust given in settlement of alimony would be tantamount to holding that by the remarriage the wife resumes all of her original rights in her husband's property, without any corresponding relinquishment on her part of the rights acquired by the decree for alimony. This, I think, is neither law nor equity. I take it that it will not be seriously contended that a remarriage of the parties did not render the decree for alimony inoperative. The agreement which had been entered into by the husband was to the effect that he would faithfully comply with the terms of the decree of the court, and, in order to guaranty his performance of such agreement, a certain portion of his property was pledged for that purpose. Suppose that no deed of trust had been executed prior to the date of the remarriage, could it be contended that the lien which had been created by virtue of the decree would continue to exist, notwithstanding the remarriage of the parties? Most assuredly such contention would be untenable, in view of the fact that such remarriage was sufficient within itself to render inoperative the decree by which such lien was brought into existence and upon which it was based.

For the reasons stated, I think that the property in question should be sold for the benefit of the creditors of Ralph Savage, the bankrupt, subject to a lien on the same for any annuities that may have accrued from the date of the execution of the deed of trust until the remarriage of the parties.