## CREEKMORE v. OVERTON et al.

Circuit Court of Appeals, Eighth Circuit.
June 21, 1928.

No. 8009.

1. **Courts ☞359—Legal effect of instrument assigning interest in real and personal property located within Oklahoma must be determined by law of that state.**

Legal effect of instrument assigning interest in estate involving real and personal property located within state of Oklahoma must be determined by a consideration of law and decisions of that state, since conveyances of property attacked on ground of fraud will, wherever possible, be considered in light of local law.

2. **Fraudulent conveyances ☞215—Plaintiff in tort action is, prior to judgment, a "creditor," within law making transfers with intent to defraud void as against creditors (Comp. St. Okl. 1921, § 6020).**

Plaintiff in a tort action is, prior to judgment, a "creditor," within meaning of Comp. St. Okl. 1921, § 6020, providing in substance that transfers of property made with intent to defraud shall be void as against all creditors, on the theory that, when a claim in tort has been reduced to judgment, it relates back and is to be regarded as a debt as of the time that cause of action accrued.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Creditor.]

3. **Fraudulent conveyances ☞215—Plaintiff, suing for alienation of affections, is "creditor," within law providing transfers of property with intent to defraud are void against creditors (Comp. St. Okl. 1921, § 6020).**

Plaintiff, in action for alienation of affections, held a "creditor" of defendant, within meaning of Comp. St. Okl. 1921, § 6020, providing in substance that transfers of property made with intent to defraud shall be void as against all creditors.

4. **Fraudulent conveyances ☞298(1)—Purpose of party making conveyance is to be determined by consideration of circumstances, and statements as to intent are not conclusive.**

Purpose of party making conveyance is to be determined by a consideration of circumstances connected with execution of instrument by which title is claimed, and what parties to transfer may state as their intent, though properly to be kept in mind, is not conclusive.

5. **Fraudulent conveyances ☞160—Title under assignment of interest in estate after institution of suit against assignor for alienation of affections with knowledge of assignee held vulnerable, notwithstanding substantial consideration paid (Comp. St. Okl. 1921, § 6020).**

Title acquired by assignment of interest in estate after institution of proceedings against assignor for alienation of affections, of which proceedings assignee had notice, held vulnerable, under Comp. St. Okl. 1921, § 6020, by reason of fraud in such transaction, notwithstanding substantial consideration was paid for transfer.

Appeal from the District Court of the United States for the Northern District of Oklahoma; Franklin E. Kennamer, Judge.

Action by William J. Creekmore against Ann Overton and others. Decree of dismissal, and plaintiff appeals. Affirmed.

Charles A. Coakley, of Tulsa, Okl. (C. B. Stuart, of Oklahoma City, Okl., and E. J. Doerner, of Tulsa, Okl., on the brief), for appellant.

T. G. Chambers, Jr., of Oklahoma City, Okl. (Moss & Young, of Tulsa, Okl., on the brief), for appellees.

Before LEWIS, Circuit Judge, and SCOTT and DAVIS, District Judges.

DAVIS, District Judge. This is an action for an injunction to restrain appellees, Ann Overton and T. G. Chambers, Jr., from asserting any right in or title to the property of the estate of C. H. Overton, deceased, by virtue of being the purchasers at a receiver's sale. A cross-complaint was filed, praying that a certain alleged assignment of interest in the said estate, executed by Ellen Overton to William J. Creekmore, be canceled. The court dismissed the bill for want of equity, and granted the relief sought on the cross-bill. The case is here on appeal.

Charles H. Overton and Ann Overton were married in 1906, and remained husband and wife until 1923, when a divorce was granted Ann Overton. Two children were born of the marriage. Some adjustment of property rights of the parties was effected about the time the divorce was granted. Charles H. Overton and Ellen Wright were married in November, 1923. Overton died May 19, 1924, leaving a will whereby one-half of his estate was bequeathed and devised to his two children, and substantially the other half to his then wife, Ellen Overton.

Ann Overton filed, in the district court of Tulsa county, Oklahoma, on September 8, 1924, a suit against Ellen Overton for damages for the alienation of the affections of Charles H. Overton. No service was had in this action, and it was dismissed on November 15, 1924, and on the same day substantially the same suit was again filed. Judgment was on April 24, 1925, rendered in favor of plaintiff in the sum of $150,000, which judgment on appeal to the Supreme Court of Oklahoma, was affirmed in July, 1926, to the extent and in the sum of $60,000.

An execution was issued on the judgment in the district court of Tulsa county, on April 24, 1925, upon which a nulla bona return was made. That court, on July 13, 1925, appointed W. B. Green, as receiver, to take charge of the interest of Ellen Overton in the estate of her husband, then in the hands of Harry M. Price and Harry Campbell, executors. The receiver, on December 7, 1925, sold at public sale all the right, title, and interest of Ellen Overton in the said estate to Ann Overton and T. G. Chambers, Jr., appellees, herein. Ellen Overton, on September 24, 1924, subsequent to the filing of the first suit against her by Ann Overton, is alleged to have, by a written instrument, sold and assigned to William J. Creekmore, appellant, in consideration of $10,000, her entire interest in the estate of her husband.

The issue in this case is whether or not the conveyance executed on September 24, 1924, whereby Ellen Overton purported to transfer all of her interest in the estate of Charles H. Overton to appellant, is valid as against Ann Overton. If this were a valid conveyance, then Ellen Overton had remaining no interest in the estate of her husband, and the appellees acquired nothing by being the purchasers at the receiver's sale.

The following facts were developed in connection with the execution of this instrument: The appellant resided at Joplin, Mo., and for many years was intimately acquainted with Charles H. Overton and Ann Overton, his first wife. He was at one time a partner of the said Overton, and had much information about his property and business affairs. Appellant was frequently a visitor at the Overton home, and had observed a happy household until about 1921, when Ellen Overton, with whom he was also acquainted, began to exert a disquieting influence in that home. Ellen Overton did actually enter into that home with the express purpose of inducing Overton to leave his family. It has been judicially determined that she accomplished that object. The facts were all known to appellant at the time they occurred, and he frequently stated that Ellen Overton was known to him to be an immoral woman. The separation of the Overtons, the divorce, the property settlement effected, the remarriage of Overton, the filing of the suit for alienation of affections, were all familiar matters to appellant. In fact, it would be difficult to acquire a more intimate insight into domestic and business affairs of any family than that possessed by appellant. He not only knew about these matters, but assumed the rôle of adviser to Ann Overton in her troubles and in the litigation that resulted therefrom.

The estate left by Overton consisted of real estate located in the state of Oklahoma,

and of real estate mortgages. The value of the interest left to Ellen Overton was about $25,000. The executors were not notified of the assignment of her interest until after the receiver's sale in December, 1925.

Appellant testified that in August, 1924, he commenced to negotiate with Ellen Overton with a view of purchasing her interest in Charles H. Overton's estate; that on September 24, 1924, he met her in Afton, Oklahoma (a place where neither of the parties resided), and consummated the transaction; that she executed the conveyance of her interest for the consideration of $10,000, which was paid in the following manner: $3,000 in cash, $5,000 in a check drawn by appellant on a bank in Afton, and $2,000 in cash on a later date; that C. O. Shepherd and Joe H. Smalley were witnesses to the execution of the paper. The witness further stated that at the time of this transaction he was informed that the alienation suit was pending and that Ellen Overton had assigned to her attorneys, as a fee for defending that suit, an interest in the estate to the extent of $7,500, and that she had no property other than her interest in the estate.

Ellen Overton testified that she took the cash paid her by appellant, concealed it in her home in Tulsa, went back to Afton about a week later, and cashed the check above mentioned; that none of this money was deposited in the bank, but that she gave $6,500 to one Harrison to invest for her in Florida, and for this sum she took no receipt, note, or other written evidence; that the balance she spent for her own use and that of some other member of her family.

[1] The appellant plants his case upon the binding character of the assignment of an interest in the estate executed by Ellen Overton, and asserts that the receiver's sale of that interest should be declared a nullity. The legal effect of that instrument should be determined by a consideration of the law and decisions of Oklahoma. The property involved, both real and personal, was located in that state. Conveyances of property, attacked on the ground of fraud, will, wherever possible, be considered in the light of the local law. Schreyer v. Scott, 134 U. S. 405, 10 S. Ct. 579, 33 L. Ed. 955; Allen v. Massey, 84 U. S. (17 Wall.) 351, 21 L. Ed. 543; Wallace v. Penfield, 106 U. S. 260, 1 S. Ct. 216, 27 L. Ed. 147; Shauer v. Alterton, 151 U. S. 607, 14 S. Ct. 442, 38 L. Ed. 286; Klinger v. Hyman (C. C. A.) 223 F. 257.

[2] The state of Oklahoma has adopted a statute (section 6020, Compiled Laws 1921) which provides in substance that transfers of property made with intent to defraud shall be void as against all creditors. This statute has been before the courts of that state, and it has been uniformly held that this law not only protects creditors whose obligations have matured at the time of the transfer, but that potential creditors come within its purview. The plaintiff in a tort action is, prior to judgment, a creditor within the meaning of the statute. This is on the theory that, when a claim in tort has been reduced to judgment, it relates back and is to be regarded as a debt as of the time that the cause of action accrued. Shelby et al. v. Ziegler, 22 Okl. 799, 98 P. 989; Union Coal Co. v. Wooley, 54 Okl. 391, 154 P. 62, 19 A. L. R. 312; Adams v. Wallace et al., 94 Okl. 73, 220 P. 872. This rule is not peculiar to that state, but is in accord with the law of this circuit and is generally applied. Bumpass v. McGehee (C. C. A.) 247 F. 306; McLaughlin v. Bank of Potomac, 7 How. 220, 12 L. Ed. 675.

[3, 4] There can be no question, then, but that Ann Overton was creditor within the meaning of the statute. We turn to the circumstances connected with the execution of the instrument by which appellant claims title, and the rule by which these facts are to be interpreted. The purpose of the party making the conveyance is to be determined by a consideration of these circumstances. What the parties to the transfer may state as to their intent, though properly to be kept in mind, is by no means to be regarded as conclusive.

In Kansas Moline Plow Co. v. Sherman, 3 Okl. 204, 41 P. 623, 32 L. R. A. 33, it was said:

"Where a transfer of property is made for the purpose, or with the intent, on the part of the person making such transfer, to hinder and delay creditors, it is fraudulent and void; and the conveyance is fraudulent and void, also, as to the transferee, if, at the time or before the making of the transfer, the transferee had notice of such facts and circumstances as would arouse the suspicion of an ordinarily prudent man and cause him to make inquiry as to the purpose for which such transfer is being made, which would disclose the fraudulent intent of the maker; and it is not necessary in order to defeat such a transfer, to show that the transferee had actual notice of, or was a participant in, the fraud of the maker of the transfer."

There are other Oklahoma cases to the same effect. Armstrong v. Wasson, 93 Okl. 262, 220 P. 643; Toone v. Walker et al., 115 Okl. 289, 243 P. 147; Apple v. American Nat. Bank, 104 Okl. 69, 231 P. 79. In the

case of Dorrance v. McAlester, et al., 91 F. 614, this court approved the following instruction given by the trial court to the jury:

"To make void a sale by a failing debtor to a creditor, actual notice to the creditor of the fraudulent intent (of) the vendor is not necessary, if the facts and circumstances within his knowledge are sufficient to put a person of common sagacity upon inquiry, and the use of reasonable diligence would lead to discovery of the fraudulent purposes of the vendor, and, if he fails to make inquiry, he will be charged with notice of the fraudulent intent.

"No purchaser thus put upon inquiry has a right to remain willfully ignorant of the facts within his reach. It is not sufficient for his protection to show that he was a purchaser for value. He must also be a bona fide purchaser; a purchaser in good faith; a purchaser without notice of the fraudulent intention on the part of the party from whom he purchases.

"By aiding a debtor to convert his property into money or promissory notes which can be easily concealed from the creditors, and placed beyond their reach, with notice, actual or constructive, that he is doing so to defraud his creditors, the person so purchasing participates in the fraud of the debtor, by assisting him in carrying out his fraudulent purposes."

[5] The facts in this case viewed in the light of the authorities leave no doubt that appellant had notice of the purpose of this transfer. There existed more in this case than a mere suspicion of a purpose to defraud. The appellant was thoroughly informed concerning the relations of the parties interested in this estate and the feeling and controversy that existed between them. He knew that Ann Overton had filed a suit against Ellen Overton in which substantial damages were claimed, and that this suit was pending at the time the conveyance was made. By this transfer appellant took over all the tangible property that this woman possessed, and rendered her immune to any judgment that might be rendered. He aided her to place

her means beyond the reach of a creditor. This transfer when made was neither placed of record, nor was any other notice given of it. The appellant asserted no claim under it until after the receiver's sale. The existence of this instrument was a secret for more than a year after its execution.

These facts clearly indicate that appellant knew that this transaction had its inception in a desire to defraud Ann Overton. But weight is attached to the fact that appellant paid a substantial consideration for the transfer. An adequate consideration may indicate good faith, but it does not establish an honest transaction in the light of the facts revealed by this record. In Brittain v. Crowther, 54 F. 295, this court said:

"A full consideration, paid in cash, will not protect a purchaser who has notice, actual or constructive, that the vendor is selling to defraud, hinder, or delay his creditors; and the reason is that by aiding the debtor, to convert his visible and tangible property, which cannot readily be concealed from his creditors, into money or negotiable securities, which it is easy to put beyond their reach, the purchaser thereby assists the debtor to carry out his fraudulent purpose."

See, also, Walker v. Collins, 50 F. (C. C. A. 8) 737; Dorrance v. McAlester et al., 91 F. (C. C. A.) 614; Clement v. Nicholson, 6 Wall. 299, 18 L. Ed. 786.

"The general rule is that a purchase made by one not a creditor is fraudulent and void as against creditors, where it is made with notice of the fraudulent intent of the seller, notwithstanding the fact that the buyer has paid an adequate consideration, knowledge or implied notice is equivalent to and constitutes participation, where the transfer is to one not a creditor." 27 C. J. 510.

The trial court saw and heard the witnesses relate the facts touching upon this controversy. Deference should on that account be accorded its finding. But the record has been carefully examined and it conclusively appears that appellant's title is vulnerable by reason of the fraud revealed by this transaction.

The decree should be, and is, affirmed.