In the Matter of GEORGE FROST, JR., et al., as Executors of JOHN R. FROST, SR., Deceased, Respondents. ESSIE L. FROST, Appellant.*

Third Department, November 11, 1942.

* Decision amended, 265 App. Div. 1028.

*R. D. Woolsey* for appellant.

*Joe Schapiro* for respondents.

BLISS, J.   On May 28, 1898, the appellant Essie Frost went through a marriage ceremony with Addison Godwin at Cortland, N. Y.   They immediately commenced living together as husband and wife and continued to do so for about three years. During all of this time appellant was known as Mrs. Godwin. They lived at various places in the State of New York such as Cortland, Owego and Trumansburg and also in New Jersey, Georgia, Alabama, Florida, Illinois, Missouri and Virginia. Although appellant did not know it, Godwin at the time of the ceremony had a wife who later obtained a divorce from him in February, 1899.   In 1901 appellant learned for the first time of Godwin's first marriage and divorce and she immediately left him and never lived with him after that.   Godwin is still living. On January 18, 1910, appellant married William Haddon and lived with him until September 15, 1915, when she secured a divorce from him in New York State.   On January 17, 1918, she was married to John R. Frost and continued to live with him until the fall of 1934, when they separated.   Godwin also married at least once after the separation.   Frost is now dead and appellant has filed an election to take a widow's share of his estate as in intestacy.   The executors challenge the validity and effect of such election.   They claim and the Surrogate has held that when appellant married Frost she was still the lawful wife of Godwin and that her marriage to Frost was void upon the theory that although appellant's ceremonial marriage to Godwin was void, she contracted with him a common-law marriage.

Appellant contends that she was not the common-law wife of Godwin. It is not contradicted that she married Godwin by a ceremonial marriage and intended to be his wife and live with him as his wife because of the bond of that ceremony. It was the fact, however, unknown to her, that Godwin had a living wife by a previous marriage. This impediment was removed during the period she lived with Godwin but she did not know of the removal of the impediment any more than she had known of its existence, until some time in 1901, whereupon she immediately left him. It is urged that, in any event, appellant became the common-law wife of Godwin by reason of continuing to live with him as his wife after the impediment to their ceremonial marriage was removed. This would be presumptively true according to the great weight of authority (*Matter of Haffner,* 254 N. Y. 238; *Matter of Wells,* 123 App. Div. 79; affd., 194 N. Y. 548), but it completely overlooks the fact that the conduct of appellant and Godwin completely rebuts any such presumption. The principle of the decided cases is that the continuation of what appears to be a marital status after the removal of the impediment will be held to be strongly presumptive of such status. But in the case before us there is not only the uncontradicted testimony of appellant, but also the entirely consistent conduct of both appellant and Godwin many years ago when she learned that Godwin had had another wife at the time of her ceremonial marriage to him. This clearly demonstrates that there was no intention on the part of either to live as man and wife, except pursuant to the formal ceremony by which they originally intended to become husband and wife.

There is no policy in such a situation to prevent a showing of the true facts and render a decision between these parties accordingly. This is a private litigation involving the property rights of contesting parties, whose rights will be affected by the court's decision as to the existence of a common-law marriage. No marital status or relationship is here under attack as such; our inquiry in that regard is incidental only to the solution of the property rights of the litigants. There exists no reason why the parties should not be treated in accordance with the fair inferences to be drawn from their own conduct.

Appellant left Godwin as soon as she knew her ceremonial marriage was void. She had no intention, *in præsenti* or otherwise to be his common-law wife. Subsequently both appellant and Godwin were married — a further indication that no binding tie was recognized or intended, once the invalidity of the ceremonial marriage became known to appellant. The presumption of a common-law marriage based upon continuing to

live together after removal of the impediment is completely repelled by the acts of both appellant and Godwin.

The various cases holding that a common-law marriage exists by continuation of an apparent marital status after removal of an impediment regardless of the knowledge of either party of .such impediment have no application where such relationship is itself voluntarily terminated by the parties once the true facts become known. In such a case it is apparent that no common-law marriage was intended even though certain external evidence might so have indicated. The presumption is designed to aid those who have in good faith so intended and so conducted themselves. It has no application where, as here, the true intent is clearly ascertainable from the conduct of the parties and no policy considerations are present to prevent giving effect to the parties' acts in deciding their rights.

This is a private suit and not a matrimonial action. Consequently the court is free to give more weight to the equities and less to consideration of public policy. (*Krause* v. *Krause,* 282 N. Y. 355.) The interests of the State as a whole are involved to but a small extent. Whatever interest the State has in the outcome would seem to lie in appellant's favor because the awarding to her of a widow's share in her late husband's estate will prevent the possibility of her becoming a public charge. The State should have a greater interest in sustaining appellant's marriage to Frost than in creating at this late date a consensual marriage between her and Godwin when it is clear that neither of them intended or believed that such marriage existed.

This is also a contest between rival claimants to the property of a decedent. The latter had married appellant by a ceremony, lived with her for several years as husband and wife and finally referred to her as his wife in his last will and testament. Now the respondents, whose only interest in the property comes through him, claim that the decedent was not appellant's husband, his marriage bigamous and void, and that he had been living in adultery with appellant. Such contention lacks appeal.

The decree should be reversed upon the law and facts with costs to appellant payable out of the estate, and a decree directed sustaining the validity and effect of appellant's notice of election.

HILL, P. J., CRAPSER, SCHENCK and FOSTER, JJ., concur.

Decree reversed on the law and facts with costs to appellant payable out of the estate, and a decree directed sustaining the validity and effect of appellant's notice of election.