In the Matter of the Estate of MARGARET H. WYNNE, Deceased.

Surrogate's Court, New York County, December 6, 1948.

*Lionel S. Popkin* and *Robert L. Pelz* for Samuel M. Goldsmith and others, as executors of Margaret H. Wynne, deceased, petitioners.

*Lillian D. Rock* and *Elliott L. Biskind* for Charles J. Wynne, respondent.

*Henry Silverman,* special guardian for Robert H. Moore, Jr., an infant, respondent.

DELEHANTY, S. The court is asked in this proceeding to determine the validity of a purported notice of election against the will of deceased filed by a person claiming to be her surviving spouse. The petitioners are the executors of deceased; the respondent the person claiming the status as spouse. By answer that status of spouse is claimed to have been created " in or about June 1947 ". The answer was particularized by formal bill of particulars wherein the alleged remarriage is said to have occurred on June 6, 1947, at Washington, D. C. The answer also alleges a history of matrimonial relations between deceased and respondent including a marriage in 1942 in this State, a divorce in 1943 in Florida, a remarriage in Florida in 1944, a divorce (claimed to be fraudulent) in Florida in 1946 and (as already noted) a remarriage in June, 1947. The inconsistency between the allegation of fraud in the 1946 divorce and the allegation of marriage in 1947 is obvious. The proof taken covered the entire matrimonial history of deceased and respondent. When the proof was completed there were presented questions respecting (1) the alleged remarriage of June, 1947; (2) respecting the existence of an undissolved marriage of 1944 between the parties, and (3) respecting the

effect of an instrument of waiver of right to elect concededly executed in 1942 while the parties thereto were man and wife. Concededly deceased died domiciled in New York County, New York. The law of this State is applicable to the administration of her estate.

In respect of the so-called nonceremonial marriage of June 6, 1947, the proof demonstrated that deceased on that day was physically in a hotel in this city and could not have been a participant in the transaction which was recited by the chief witness for respondent. This demolition of the case of respondent so far as it rested on a claim of nonceremonial marriage as of June 6th resulted in an application to amend the bill of particulars so as to allege a marriage on June 7, 1947. The motion to amend was granted and the case was finally submitted on a claim of marriage on the second date thus chosen. Following the amendment of the bill of particulars petitioners presented convincing proof that on June 7th also, deceased was in the same hotel in this city and was not in the city of Washington. It follows from these findings of the court that the claim of nonceremonial marriage must fail because the proof presented in respect of it is demonstrated not to be true.

But another reason exists for refusing credence to the claim of nonceremonial marriage. Support for it was offered by way of proof by friends of deceased and of respondent that the couple occupied common quarters in the New York hotel after the date of the alleged agreement to marry. That proof, however, in itself shows that there was no agreement to marry. One of the witnesses said that the association between deceased and respondent after June, 1947, was regarded as something that was not to be inquired about. Without quoting the exact words of this witness his testimony was to the effect that the association was furtive and *sub rosa* — the very antithesis of a matrimonial association. When parties themselves so behave as to show that there was no agreement to marry the court should accept their construction of their relationship and say, as they by their conduct say, that they are not married. " There exists no reason why the parties should not be treated in accordance with the fair inferences to be drawn from their own conduct." (*Matter of Frost,* 265 App. Div. 64, 66; and see *Matter of Gaugry,* N. Y. L. J., Feb. 9, 1944, p. 535, col. 7). " To constitute a common-law marriage there must be an agreement between the parties, a present consent, *per verba de præsenti,* to take each other as husband and wife, to enter into a relation

which was to continue until death did them part, with the resulting obligations of husband and wife. This consent is of itself sufficient, *but for it there is no substitute or equivalent.* [Citing cases.] In the absence of this intention and agreement, the facts of their sexual relations, that they lived together, that they used the same name, that they were regarded as husband and wife, do not supply the deficiency. Without this mutual *bona fide* intention and agreement there is no marriage at common law ''. (Emphasis in original. *Graham* v. *Graham,* 211 App. Div. 580, 583.)

Since the claim of nonceremonial marriage is wholly without basis the court passes to the consideration of the second position taken by the respondent, to wit, that at deceased's death he was still her husband by virtue of the 1944 marriage. His position in this respect depends upon his attack on the 1946 divorce. In respect of this divorce he asserts that he was tricked into going to Florida in the winter of that year. He appears also to suggest in his proof that he was lulled into inaction in respect of the divorce while it was pending by some oral assurances of deceased that she was not .going on with it. Respondent claims that he and deceased were both domiciled in New York and that the Florida court had no jurisdiction over deceased or over him. He concedes that he was served with a process of the Florida court after an action for divorce was instituted by deceased there in 1946. He concedes that that service was made on him in Florida and that he remained in Florida for months after he was so served and that he was in Florida at the time the divorce decree was entered.

So far as domicile of this respondent is concerned the record would as much support a finding of domicile in Florida on his part as it would support a finding that he was domiciled elsewhere. The proof does not show that he was domiciled in New York. He had some nominal activities here but so far as he had any definite place of abode since a period prior to the 1946 divorce that abode definitely was in Florida. The court holds that the claim of domicile in New York was not established by respondent.

But without regard to the actual domicile of respondent he is held by the court to be bound by the Florida decree of 1946. He was, as already stated, actually in Florida when he was served with the process of the court. He had complete opportunity to contest the jurisdiction of the Florida court. He elected not to make the contest. Having failed to make it he

cannot now raise issue respecting the service on him or deny the authority of the Florida court to enter the decree of divorce between him and deceased (*Sherrer* v. *Sherrer*, 334 U. S. 343). Respondent's contention that he was lured to Florida is without a shred of support. The proof establishes that he went there to live with his sister at his and her home in Florida — being apparently unable to maintain himself after deceased discontinued her support of him. His claim that he was lulled into inaction is equally baseless. In other words, the Florida decree of 1946 effectively bars any right of election on his part against deceased's will.

But it is useful to note that respondent also is barred by reason of the postmarital agreement of 1942. The marriage in 1942, occurred on March 25, 1942. The waiver was executed on April 6, 1942. The waiver was extant when deceased died. In it respondent in his then existing character as spouse expressly waived all claims to participate as such in the estate of deceased under our Decedent Estate Law. Under the waiver agreement — a mutual one — deceased waived any rights in respondent's estate '' at the time or *upon the death* of her said husband.'' Respondent agreed to waive in equally broad fashion all his rights '' at the time or *upon the death* of his said wife.'' The contention that because the parties thereafter were divorced and then remarried the agreement fails is a claim which runs counter to the very text of the agreement which speaks of a lifetime and not of a marriage period. The parties contracted in their characters as husband and wife. There is no limitation on the purport of the agreement and none upon its future effectiveness. The case cited by respondent (*Seuss* v. *Schukat*, 358 Ill. 27) is not in point. The decision of the Illinois court was based expressly upon the tenor of the agreement. The opinion says (p. 36) that the agreement itself stated that it was made '' in contemplation of the impending marriage.'' The court there held that the parties did not contemplate any but that marriage. Here the text of the agreement shows that the parties contemplated a waiver operative throughout the whole lives of both signatories. The fact that such an agreement was outstanding at the time of the remarriage may well have been an inducing consideration to this deceased in entering into it. No effort was made to show that any limitation upon the effectiveness of the instrument was sought or claimed by respondent during the lifetime of deceased. There is not only no basis for limiting the effect of this instrument but in the

relations of the parties there is required the holding that it continued to operate throughout their matrimonial history.

It is settled that an agreement between spouses dealing with other than their matrimonial relations constitutes an independent contract not affected by alteration of the matrimonial relationship (*Smith* v. *Terry*, 38 App. Div. 394). In the cited case the agreement under consideration resulted in a conveyance of property to a third person for the purpose of securing maintenance for the wife during her natural life. The instrument of transfer provided that if the grantor died before his wife, his heirs would take the property. The trustee deeded the property in accordance with the tenor of the agreement. The court held that the heirs were entitled to possession despite reconciliation between the husband and wife after the execution of the agreement. A like holding was made in *Savage* v. *Savage* (141 F. 346).

On the basis of the conclusions reached by the court it holds that the purported election against the will of deceased filed by her former spouse is wholly without effect. He is held not to be a distributee of deceased nor her surviving spouse.

Submit, on notice, decree accordingly.