Kimball, J.
The cross appeals from the decree of the Surrogate’s Court bring up for consideration and determination four questions viz.: (1) the right of the surviving widow to elect to take against the will; (2) the ownership of certain real property; (3) the ownership of certain bank accounts, and (4) the ownership of several United States Bonds, Series E.
Taking these questions up in order, we are first called upon to say whether the surviving widow may elect to take her intestate share pursuant to section 18 of the Decedent Estate Law. Since there is no controversy as to the fact that she is the surviving widow of the testator and the fact that the testator made no testamentary or other provision for her, she is entitled to the benefits of section 18 unless she waived or released her right by reason of the provisions of a certain agreement entered into between her then husband and herself on January 18, 1926. The will made on November 22, 1948, left everything to the testator’s nephew, Floyd L. Chapman, who was also named as executor. The testator and the surviving widow lived separate from the time of the agreement of 1926. There was, of course, no right of election at that time nor until September 1, 1930, when section 18 became effective. (L. 1929, ch. 229.) Subdivision 9 of section 18 was amended in 1947. (L. 1947, ch. 379.) It is there provided: “A waiver or release of all rights in the estate of the other spouse shall be deemed to be a waiver or release of the right of election as against any last will.” The burden of establishing a waiver or release is upon the executor (Matter of Colaci, 288 N. Y. 158).
There is nothing in the record which throws any light on the circumstances surrounding the execution of the separation agreement of 1926. The attorney who prepared it is dead. Whether there was a waiver or release of “ all rights in the estate ” by the surviving widow must be determined from the agreement itself. In such determination, we must look to the agreement as a whole. Section 18 of the Decedent Estate Law is a remedial statute and should be liberally construed to effect the benefits provided for the surviving spouse,
*506 Bead as a whole, we are of the opinion that the agreement is insufficient to constitute a waiver or release of “ all rights in the estate.” The consideration paid to the then wife by the' testator was $500. The parties agreed to live separate and apart “ for and during the rest of their natural lives ”. Neither party was barred by the agreement from bringing a divorce action. It was provided that if the parties became reconciled or the marriage dissolved by court order, the agreement would become inoperative. As we construe this agreement, there was no waiver or release of all the rights of the wife in and to the estate of her husband upon his death, testate or intestate. The agreement is patently one to limit the responsibility of the husband for the support and maintenance of his wife during his life. It recites: “ the second party hereto, does hereby expressly release and relieve the first party of and from any and all obligations arising out of the marriage status for her support and maintenance or otherwise, and she does hereby expressly accept the said sum and the provisions in this instrument so made for her, in full payment, settlement and satisfaction, of any and all claims and demands of every name, kind and nature, that ■she may now have, hold or own against the said first party hereto, for her support, maintenance or otherwise, or that she might or could have hold or own in the future against the said first party hereto for her support, maintenance or otherwise, and further in full payment, satisfaction and discharge of any and all claims that she might or in the future could have, hold or own for alimony, counsel fees or otherwise.” There can be no question that the agreement insofar as above quoted, contemplated nothing more than the release of the husband for his wife’s support, maintenance and incidental obligations, such as counsel fees, during his life. There is nothing which would raise even an inference that she released or waived her rights in this estate after his death.
In the succeeding .paragraph, the wife “does further and hereby expressly release and relinquish unto the said first party, any and all right, title or interest of every kind, name and nature, she may have, hold or own, in and to any property of his, both real and personal, and in and to any property, both real and personal, which he, the said first party, may or might acquire in the future.” This effected a present transfer to her husband of any interest in real and personal property then owned by him in which she had any interest. It was also a release of any interest of the wife which might accrue to her by reason of future acquisition of real and personal property *507 by her husband during his lifetime. It may be said that she thus released all of her dower interests. Release of dower is not enough to bar the right of election. (Matter of Colaci, 288 N. Y. 158, supra.) To bar the right of election, it must appear that the surviving spouse has waived or released all rights in the estate of the other spouse. We think it cannot be said that the above-quoted portion of the agreement did so. The wife did not release or waiver her statutory exemptions and the ‘ ‘ estate ’ ’ of her husband after his death was not mentioned.
In the next paragraph the wife agreed not to incur any debts or obligations “ for necessaries for the support of herself or otherwise, against the first party hereto, or for which he might or could in any wise be held legally liable.” Again it is indicated that the agreement was one for maintenance and support. The agreement then provided that the wife, “ upon request ”, would execute further instruments “ which may or might become proper and necessary to be executed, and having to do with or affecting the interests, property, property-rights, and estate of the first party, her said husband ’ \ Taken in its context, we think the word “ estate ” was intended to refer to his property during his life and not his “ estate ” upon his death. If, however, it refers to his estate after death, there was merely an agreement by the wife to release her interest therein “ upon request.” The answer is that there was never any request and the wife signed no further instrument. If she was to release or waive all her rights in her husband’s estate upon his death at some future time, if he requested it, then it follows that the agreement before us did not accomplish that result nor was it intended to do so.
This court approved the rule stated in Corpus Juris Secundum (Yol. 26, Descent and Distribution, § 58, subd. b., p. 1075) as follows: ‘‘ However, the rights of inheritance in the property of the husband or wife are not to be denied the surviving spouse on account of a separation agreement, unless the purpose to exclude him or her is expressed or clearly inferable, and then no further than the agreement clearly requires.” (Matter of Laney, 274 App. Div. 250, 252, affd. 298 N. Y. 834.) The agreement with which we are dealing refers in no way to “ death ”, “estate after death”, “will”, “rights of inheritance” or other words or phrases which indicate any intention on the part of the then wife to waive or release all her interest in her husband’s estate. Therein it differs vitally from the agreements under consideration in such cases as Matter of Schwimmer (49 N. Y. S. 2d 481); Matter of Phillips (293 N. Y. 483); Mat *508 ter of Stiefel (73 N. Y. S. 2d 665, affd. 273 App. Div. 831); Matter of Richardson (191 Misc. 995), and Matter of Wynne (194 Misc. 459). In the instant case, there was no obligation on the part of the testator to support the wife during her life and the agreement was not made binding upon the heirs, executors and administrators of the parties. (See Matter of Burridge, 261 N. Y. 225.) The agreement here is more nearly like that in Matter of Brown (153 Misc. 282) and that in Thompson v. Thompson (163 Misc. 946, affd. 254 App. Div. 601) where it was held that the agreement did not bar the right to elect. The separation agreement before us was drawn by an attorney and if it was intended that the then wife was to release or waive all her interest in her husband’s estate, a few simple words would have been sufficient to effect such release or waiver. Such words are lacking here and may not be supplied by a doubtful inference, resulting in the making of a new contract for the parties.
The second proceeding which was tried with the one relating to the right of election, was commenced by the surviving widow before it was determined that she was an interested party. The court should not have entertained this proceeding until determination was made that the petitioner was interested in the estate. However, it was stipulated that the second proceeding should be heard sind determined. This proceeding sought to establish the ownership of certain bank accounts and certain United States (Series E) bonds. The proceeding was apparently regarded as one for discovery. There was no authority for the surviving widow to bring this proceeding, either pursuant to section 205 or section 206-a of the Surrogate’s Court Act. She was not a representative of the estate (Surrogate’s Ct. Act, § 205), nor did she claim ownership of specific personal property (Surrogate’s Ct. Act, § 206-a). However, we think that the interested parties could stipulate that the Surrogate’s Court determine the ownership of the personal property since by subdivision 4 of section 40 of the Surrogate’s Court Act, the Surrogate has specific authority to enforce the delivery of personal property belonging to or withheld from an estate. As to the government bonds which were payable to the decedent or the named survivor, we agree with the decision of the Surrogate’s Court that the named survivors are the owners of the bonds and not the estate. (U. S. Code, tit. 31, § 757c, subd. [a] and Treasury regulations.) (See Personal Property Law, § 24, added by L. 1943, ch. 632, § 1; Matter of Kalina, 184 Misc. 367, appeal dismissed, 270 App. Div. 761, and Matter of Deyo, 180 Misc. 32.)
*509 We agree with the decree of the Surrogate’s Court that the account in the City Savings Bank of Meriden, Connecticut, is the property of Frances Berlitz. Since no claim is made to the eon-1 vary, the ownership should be determined according to the law of the State of New York. The form of the deposit is statutory and there is a conclusive presumption of intention to vest title in the survivor. (Banking Law, § 239, subd. 3; Matter of Jagodzinska, 272 App. Div. 660; Inda v. Inda, 288 N. Y. 315.)
The three accounts in the commercial banks in this State were held to be property of the estate. With this holding we disagree. These accounts were also in statutory form, payable to either or the survivor. “ When as in this case, the depository is a commercial bank, the presumption in favor of the survivor is a rebuttable presumption * * * the presumption continues until it is overcome by competent proof of facts to the contrary ”. (Matter of Jagodzinska, supra, pp. 661-662; Banking Law, § 134, subd. 3.) No evidence was produced to overcome the presumption. There was no claim of fraud. There was no proof that the accounts were merely for convenience of the testator. The signature cards were signed by the survivors. The test is ‘ ‘ whether the husband has in good faith divested himself of ownership of his property or has made an illusory transfer.” (Newman v. Dore, 275 N. Y. 371, 379.) In the Newman case (supra) the court quoted from Benkart v. Commonwealth Trust Co. (269 Pa. 257, 259) as follows (p. 379): “ The good faith required df the donor or settlor in making a valid disposition of his property during life does not refer to the purpose to affect his wife but to the intent to divest himself of the ownership of the property.” (See, also, Matter of Lorch, 33 N. Y. S. 2d 157 [Surrogate’s Ct. Queens Co.], and cases there cited.)
We do not need to pass upon the question as to whether the deed from the testator in his lifetime to Floyd L. Chapman, vested title and ownership in the grantee. The Surrogate’s Court was without jurisdiction to entertain and determine that question. The proceeding begun by the surviving widow to determine the ownership of the personal property made no mention of the real estate. As an afterthought, apparently, the parties stipulated that the title to the real estate might also be passed upon by the court in that proceeding. Jurisdiction may not be conferred by consent. (Matter of Morris, 134 Misc. 374; Matter of Brennan, 129 Misc. 283; Matter of Mathewson, 210 App. Div. 572; Matter of Walker, 136 N. Y. 20.) By section 40 of the Surrogate’s Court Act, no specific power is given to the court to adjudicate the ownership or possession of real prop *510 erty in an independent proceeding for that purpose. The general equitable powers of the Surrogate’s Court come into being only when the court has before it a proceeding of which it has jurisdiction. Then it may hear and determine all questions, legal or equitable, to do full and complete justice between the parties. Here, no such proceeding was before the Surrogate. The parties in effect, stipulated that the Surrogate take jurisdiction of an equitable action to set aside a deed. The Surrogate had before him no proceeding to construe the will nor one for final judicial settlement. Therein this case differs from Matter of Engel (140 Misc. 276); Matter of Morris (134 Misc. 374, supra), and Matter of Wojtkowiak (276 App. Div. 942). In Matter of O’Flyn (174 Misc. 1025, 1028) Surrogate Wingate said: ‘6 Finally, and presently most pertinent, it has repeatedly been held that whereas in a direct proceeding the jurisdiction of the surrogate does not extend to an adjudication of the title of realty, this jurisdiction does inhere in the course of the determination of issues upon an accounting.”
The second, seventh, eighth, ninth, and tenth ordering paragraphs of the decree should he reversed on the law and facts, and otherwise the decree should be affirmed, without costs of this appeal to any party, and the matter should he remitted to the Surrogate’s Court of the county of Steuben with directions to enter a decree in accordance with this opinion.