John D. Bennett, S.
The petitioner’s right to letters of administration is dependent on whether she was the common-law wife of the decedent. Her petition is opposed by three sisters of the decedent. A hearing has been held and testimony taken on the issue involved.
To establish a common-law marriage, the validity of which is always open to suspicion, especially when one party is dead, clear, consistent and convincing evidence is required. (Boyd v. Boyd, 252 N. Y. 422; Matter of Wells, 276 App. Div. 822, affd. 301 N. Y. 796.) The burden of proof to establish such common-law marriage is on the one who claims its existence. (Fidanque v. Fidanque, 276 App. Div. 543.)
This natural suspicion against common-law marriages may be dispelled where the existence of such marriage is established by testimony which clearly establishes that although the parties entered into a meretricious relationship, they thereafter agreed to live together as husband and wife. The determination of the existence of a common-law marriage must be predicated upon testimony as to what occurred prior to April 29, 1933 when common-law marriages were declared invalid by the laws of this State. (L. 1933, ch. 606.) Documentary evidence and *726 other testimony which relates to acts occurring after such date cannot serve to establish the existence of a common-law marriage prior thereto in the absence of clear and convincing testimony for the prior period. (Zy v. Zy, 13 N. Y. ¡3. 2d 415, 419.) An essential element of a common-law marriage is an agreement between the parties to take each other as husband and wife in a permanent union. (Matter of Burdak, 173 Misc. 839; Matter of Wynne, 194 Misc. 459.) In Graham v. Graham (211 App. Div. 580, 583), the court stated the general rule “ To constitute a common-law marriage there must be an agreement between the parties, a present consent, per verba de preesenti, to take each other as husband and wife, to enter into a relation which was to continue until death did them part, with the resulting obligations of husband and wife. This consent is of itself sufficient, but for it there is no substitute or equivalent (2 Kent Com. 77; Brinkley v. Brinkley, 50 N. Y. 184; Harbeck v. Harbeck, 102 id. 714; Foster v. Hawley, 8 Hun 68; Smith v. Smith, 194 App. Div. 543; Bates v. Bates, 7 Misc. 547, Freedman, J.). In the absence of this intention and agreement, the facts of their sexual relations, that they lived together, that they used the same name, that they were regarded as husband and wife, do not supply the deficiency. Without this mutual bona fide intention and agreement there is no marriage at common law, under the statute (Domestic Relations Law, § 10), or, for that matter, in the ecclesiastical law.”
The testimony in the instant case indicates that the petitioner and decedent may well have entered into a purported agreement to live together as husband and wife. However, there is no testimony whatsoever of such an agreement having been reached prior to April 29, 1933. The testimony, in fact, is to the contrary. When the petitioner was asked what she and the decedent said regarding marriage, she replied: “ We both had hot dispositions. I guess maybe we both liked to feel that we were free. If he wanted to go or I wanted to go, maybe we could, but we stayed together all those years.” A desire to feel free to leave each other at any time is inconsistent with the establishment of a marriage, common-law or ceremonial. It is unfortunate that the petitioner and the decedent did not comply with the Legislature’s dictate as to marriage formalities, or that the decedent left no will which would have provided for the petitioner. In this matter the court may not supersede the Legislature or disregard the failure of the decedent to express his testamentary intent in a valid will.
The petition for letters of administration is therefore denied.
Submit decree on notice.