Alexander Berman, J.
Defendant, former husband of *861 plaintiff, has moved for modification of the judgment of divorce pursuant to section 248 of the Domestic Relations Law, seeking to eliminate alimony by reason of his former wife’s living with another man; or, in the alternative, for a downward modification of alimony because of plaintiff’s improved financial circumstances. A hearing of the disputed issues was ordered and held.
The parties, having been married in 1950, lived together for a period of about 20 years, and had three children, two of whom are now emancipated. The youngest, 11 years of age, resides with plaintiff. The decree, dated June 12, 1971, awarded alimony to plaintiff in the sum of $10,000 per annum and child support in the sum of $6,000, plus other benefits. Defendant has fully and faithfully complied with the provisions of this decree. No issue was raised as to his ability to continue to so comply. Nor was there any application to modify the child support provisions.
This decision will deal first with the issue raised by defendant that he is no longer liable for alimony by virtue of the relationship of plaintiff with another man, contending that she is habitually living with him in a relationship tantamount to that of a wife. The text of the pertinent portion of section 248, on which defendant relies, follows: "The court in its discretion upon application of the husband on notice, upon proof that the wife is habitually living with another man and holding herself out as his wife, although not married to such man, may modify such final judgment and any orders made with respect thereto by annulling the provisions of such final judgment or orders or of both, directing payment of money for the support of such wife.”
Plaintiff concedes that she resides in the same apartment with another man, one Abe Rowen, occupying with him the same bedroom, and that such relationship has been continuous, habitual and of at least one year’s duration. Plaintiff, however, relies upon the conjunctive provision of the statute which, she contends, requires proof that she is also holding herself out as his wife, a status she denies exists.
The evidence disclosed that at least since September 1, 1975, the aforesaid Abe Rowen, a widower, and plaintiff, have continuously resided in a two-bedroom apartment located at 30 Grace Avenue, Great Neck, New York. One of the bedrooms is occupied by plaintiff and Rowen and the other is occupied by the infant daughter of the parties. There is also *862 some evidence that Rowen and plaintiff had an intimate relationship before that date.
It is clear that plaintiff and Rowen, except for two occasions, which are later referred to herein, have been meticulous in avoiding a public holding out of themselves as husband and wife. In this respect, the proof establishes, for example, that the lease of their apartment names the tenants as Abraham Rowen and Charlotte Stern, although, according to her testimony, it had been first prepared by the landlord naming the tenants as Mr. and Mrs. Rowen. There are two separate telephones, one in his name and one in hers; tickets for trips which they made together were issued and billed separately in their individual names; and each maintained a separate checking account in his or her own name. They testified that they shared all household expenses and each separately paid his or her own bills for their respective purchases. They emphatically denied ever holding themselves out as Mr. and Mrs. Rowen. However, on two separate occasions the evidence disclosed that they stayed at hotels in which they were registered as Mr. and Mrs. Rowen. Plaintiff and Rowen contend, as to these registrations, that neither one informed the hotel clerk that they wished to be so registered, and that they did not personally indicate such relationship on the registration card.
Other than the two registrations, there has been no evidence of an actual holding out as husband and wife. The two hotel registrations referred to are isolated incidents and the court is not satisfied from the testimony that Rowen, or the plaintiff, actually directed their registrations as "Mr. and Mrs.” The court is cognizant of the fact that resort hotel clerks generally do not inquire as to the relationship between a couple when the man registers and apparently take for granted that the parties are husband and wife. There is no proof that either Rowen or plaintiff wrote the words "Mr. and Mrs.” on the registration cards.
There is no doubt that the relationship between them has many of the trappings of a marriage. They lived together in an intimate relationship such as man and wife; they visited their respective families together; they made regular visits to plaintiff’s daughter at summer camp such as parents might do; and together they visited and enjoyed the company of mutual friends; they went on many trips and vacations; and out to dinner and theatre and other places — but always care *863 ful not to hold themselves out or refer to themselves as Mr. and Mrs. Rowen.
There is no credible evidence that Rowen provided financial support for plaintiff, except that he had, he conceded, paid for dinner and entertainment on the many occasions when they dined out or attended a theatrical performance, movie, or other entertainment.
The phrase "holding herself out as his wife” contained in the statute has a clear, unambiguous and significant meaning. As a matter of fact, the holding out by a man and woman of one another as husband and wife, while it did not, of itself, establish the existence of a common-law marriage, was, in fact, an essential element thereof. "Cohabitation and reputation, or the holding out of one another to the world as husband and wife, do not establish a common-law marriage, although they constitute evidence of such a marriage.” (1 Foster-Freed, Law and the Family, § 2:36.) (See, also, Matter of Heitman, 154 Misc 838, affd 247 App Div 855, affd 272 NY 533; Gordon v Gordon, 27 Misc 2d 948, affd 13 AD2d 983; Matter of Arbuthnot, 4 Misc 2d 725, affd 6 AD2d 1048; Matter of Anderson, 31 NYS2d 552; Taylor v Taylor, 164 Misc 401; Boyd v Boyd, 252 NY 422.)
It is obvious that the legislative intent relating to section 248 was not to deprive a former wife of alimony merely because she was habitually living with another man, but only when there existed the combination of such living together and the holding out as his wife, so as to constitute a relationship similar to what formerly was an element of a common-law marriage.
Mr. Justice Hofstadter, in the case of Rosenberg v Rosenberg (46 Misc 2d 693, 695), an Appellate Term decision, interpreting section 248, held that both elements, i.e., living together and holding out as a wife, were essential before the court could exercise its discretion: "Its second sentence, relied on below for the results reached, permits the court 'in its discretion’ to modify a final judgment of divorce in favor of the wife or a final judgment annulling the marriage or declaring its nullity, and any orders with respect thereto, by annulling the provisions of such final judgment or orders or both directing payment of money for the wife’s support 'upon proof that the wife is habitually living with another man and holding herself out as his wife’ * * * In the next place, in contrast with the earlier mandate of the section that on proof *864 of the wife’s remarriage the court must annul the support directions of such a judgment, it is here provided that the court 'in its discretion * * * may modify such final judgment’ by striking its support directions. The difference is significant and obviously purposeful; clearly the relation described was not of itself enough to require the deletion of the support provisions. The equities of the particular case were to be weighed and a determination made in the exercise of judicial discretion.”
In the case at bar, while it is undeniably true that plaintiff and Rowen were living together in a consensual relationship and enjoying many of the attributes of a marriage, there is a dearth of proof that they were publicly holding themselves out as husband and wife. The fact that Rowen may have contributed, at times, toward the expenses of plaintiff, does not, even when taken together with the other proof, constitute a holding out of her as his wife.
For many years, in certain segments of our society it was, and still is, a common practice for couples of opposite sex to live together, to share expenses, and to enjoy each other’s company and sexual relations without benefit of clergy. Such a relationship has never been recognized as a marriage, nor even a pseudo-marriage. The relationship between plaintiff and Rowen has never developed into anything more than an habitual living together.
The court is aware of the recent holding by the Appellate Division, Fourth Department, in Northrup v Northrup (52 AD2d 1093). However, that case can be distinguished from the case at bar since it appears that there the court apparently used the fact that the former wife was living with another man as the basis for a presumption that she had made affirmative representations to third parties that she and her paramour were married. Here, there is direct proof that Rowen and Stern went to great lengths to inform the world that they were not husband and wife. Any presumption to the contrary has been dispelled by the proof.
Under the circumstances, the court concludes that defendant has failed to establish the combination of the two essential elements set forth in section 248, which must be found before it may exercise its discretion to eliminate a former husband’s obligation to pay alimony.
We turn now to the second prong of defendant’s application, made pursuant to section 236 of the Domestic Relations Law. *865 Defendant claims that substantial improvement in the former wife’s financial circumstances since the judgment of divorce merits a downward modification in the alimony provision of the decree. He does not, however, urge his inability to comply with the financial provisions of the decree and concedes that his salary alone, excluding any other income, was in excess of $100,000 for the year 1975.
Defendant relies upon the fact that plaintiff is the sole stockholder of a business corporation which operates a retail shop in Manhasset, is the owner of the building where the business is located, and also continues to own the former marital home in West Hempstead. An analysis of her assets, however, discloses that the West Hempstead house was heavily mortgaged to enable her to purchase the property in Manhasset, and that there is now a refinanced larger first mortgage, as well as a second mortgage. This refinancing was part of the source of the necessary funds to purchase the Manhasset property in addition to a new first mortgage which she obtained on the latter parcel. The income from the tenants of both properties is clearly insufficient to meet the maintenance and carrying charges thereon. The business itself is a retail shop, the income from which is not yet sufficient to pay her a salary, and furthermore, all indications are that this business appears doomed to failure. It also is clear that plaintiff is heavily indebted to banks, is in arrears in mortgage payments and in grave danger of losing these properties. The court doubts the wisdom of her financial maneuvers. At any rate, it will be a long time before either the business, or the properties, will begin to show any net income. Her own evaluation of these properties, in a financial statement which she made for the purpose of obtaining a loan, is obviously puffed up, and not evidence of their true market value.
From all indications, plaintiff appears to be in a worse financial condition now than she was at the time of the divorce.
Inasmuch as defendant has failed to establish a substantial improvement in plaintiff’s financial condition, his application for a downward modification of alimony is denied.
Counsel fees are hereby awarded to plaintiff in the sum of $1,750, payable 30 days after service upon defendant’s counsel of a copy of the order to be entered herein.