Ralph Diamond, J.
At the request and consent of the parties, the court has not used the true names of the parties in writing its decision. This matter involves two married couples who switched partners. For the purpose of simplification and identification, the court has used the following fictitious names and identifies the parties as follows:
carol — The herein petitioner, is the former wife of Bob, is not presently married and is residing with Ted.
bob — The herein respondent, is the former husband of Carol and is presently married to Alice.
*802 ted — The former husband of Alice, is not presently married and is residing with Carol.
Alice — The former wife of Ted and the present wife of Bob.
The matter originated in the Family Court by the petitioner, Carol, bringing a petition under article 4 of the Family Court Act for enforcement of the support provision of a judgment of divorce made by the Supreme Court, New York County. The respondent, Bob, cross-petitioned for modification of the same judgment asking the court to eliminate alimony payments and cancel accrued alimony arrears. Respondent mainly bases his prayer for relief, on the ground that Carol has been habitually living with Ted and holding herself as his wife, so as to satisfy the prerequisites of section 248 of the Domestic Relations Law, hereinafter known as section 248.
This decision of the court is limited to the following issues raised during the trial:
(1) Was there a "holding out” as contemplated by section 248?
(2) Assuming the court finds a "holding out”, whether that fact can affect a separation agreement which was incorporated into a judgment of divorce but which survives it?
(3) Assuming the court finds it has discretion to modify a divorce judgment which incorporates but does not merge a separation agreement, should the court exercise its discretion upon the facts in this case.
FACTS
It is undisputed that during 1974, while Carol was married to Bob, and Alice was married to Ted, the parties socialized as couples. This relationship changed when the parties mutually decided to sexually switch partners. The parties all admit that with each other’s consent and knowledge, they privately had sexual relations with the other’s mate. This relationship ultimately resulted in the separation and divorce of the parties.
Since the entry of the judgments of divorce, Bob married Alice. Carol did not marry Ted, and admits she has been living openly and continuously with him in the house she formerly shared with Bob. However, she does deny that she holds herself out as Ted’s wife.
It is also undisputed that prior to Carol and Bob entering into a separation agreement, extensive negotiations and dis *803 eussions were held between them and their attorneys, in regard to termination of the alimony payments. Bob insisted upon a provision in the separation agreement which would effectively terminate alimony payments if she lived with a man to whom she was not married. Carol refused to enter into an agreement conforming such a provision. Knowing that the separation agreement provided for the termination of alimony payments only on death or remarriage, Bob finally executed the separation agreement on July 25, 1975. The parties were then divorced by judgment entered on September 11, 1975.
"holding out”
Section 248 provides in relevant part: "The court in its discretion upon application of the husband on notice, upon proof that the wife is habitually living with another man and holding herself out as his wife, although not married to such man, may modify such final judgment and any orders made with respect thereto by annulling the provisions of such final judgment or orders or of both, directing payment of money for the support of such wife.”
The petitioner, having admitted that she has habitally lived with Ted, although not married to him, limits the remaining issue to a determination of whether she held herself out as Ted’s wife. Section 248 does not spell out the basis for determining a holding out nor has the court found any New York Court of Appeals case setting forth any guidelines.
The court is impressed with the decision in Northrup v Northrup (52 AD2d 1093) wherein the court stated: "Section 248 of the Domestic Relations Law does not require the husband to prove that his former wife made affirmative representations to third parties that she and her paramour were married. The fact that they lived together in what might reasonably be considered a marital relationship is sufficient.”
Justice Alexander Berman, in Stern v Stern (88 Misc 2d 860, 864) in concluding that there was "no holding out” distinguished that case from Northrup, by stating: "[T]hat case can be distinguished from the case at bar since it appears that there the court apparently used the fact that the former wife was living with another man as the basis for a presumption that she had made affirmative representations to third parties that she and her paramour were married. Here, there is direct proof that Rowen and Stern went to great lengths to *804 inform the world that they were not husband and wife. Any presumption to the contrary has been dispelled by proof.”
The court finds that neither Carol nor Ted went to any lengths to inform the world that they were not husband and wife. The court finds just the opposite to be true. Carol testified that her relationship with Ted is the same as she had when married to Bob, except that her inner feelings are different and they do not have to financially account to each other. She further testified that she did explain her true relationship with Ted to her children, but says nothing to others.
The testimony indicated that: every day when he was through with his normal day’s work, Ted came home to Carol; they spend their weekends together; he had no other residence; they ate their meals together; they socialized as a couple; she never went out with any other man; they shared the food shopping; Ted does the normal chores both inside and outside the house; they go on trips together; Carol’s children refer to Ted’s parents as grandma and grandpa; Ted takes Carol’s children to sporting events; together with other acts that would indicate a husband and wife relationship.
Under these circumstances, the court concludes that the life style of Carol and Ted would lead a reasonable person to believe that they were living in a marital relationship. Therefore, the court finds that there was a "holding out” and that all the prerequisites of section 248 have been satisfied.
EFFECT OF SECTION 248 UPON A JUDGMENT OF DIVORCE WHICH INCORPORATES BUT DOES NOT MERGE THEREIN
The issue before the court is whether it has the right, pursuant to section 248, to modify a judgment of divorce which incorporates but does not merge therein.
The law is well settled, that if the same issue was before the court regarding section 236 of the Domestic Relations Law or section 466 of the Family Court Act, the answer would be in the affirmative.
An excellent summary of the history of New York law regarding the ability of the court to modify a judgment of divorce which incorporates but does not merge therein, is contained in Kreuger v Kreuger (86 Misc 2d 857, 860), where Justice Heller stated:
"As regards alimony, the law in New York used to be that a *805 prior agreement 'was not effected by the decree granting an absolute divorce’ and the court could not direct 'such a modification of the judgment of divorce as would terminate the force and legal effect’ of the agreement (Galusha v Galusha, 116 NY 635, 645). This principle remained intact until 1940 when the Court of Appeals in Goldman v Goldman (282 NY 296) held that a court could order a downward modification of alimony provided in a divorce judgment notwithstanding the existence of a prior agreement incorporated, but not merged into the decree. Further erosion in the old rule occurred in McMains v McMains (15 NY2d 283, supra) when the Court of Appeals reiterated its holding in Goldman and expanded the power of the court to make modifications in those cases increasing the amount of alimony 'when it appears not merely that the former wife wants or by some standards shall have more money but that she is actually unable to support herself on the amount heretofore allowed and is in actual danger of becoming a public charge’ (McMains v McMains, supra, pp 284-285).
"As a result, therefore, of the Goldman and McMains decisions, it is clear that the court now has the power to modify the alimony terms of a divorce judgment, which incorporates but does not merge therein the provision of a prior agreement, under the two sets of circumstances just expressed (Swartz v Swartz, 43 AD2d 1012, 1013). It would appear that the prior law, i.e., the court is without power to make a modification, remains viable only in those situations where the former wife seeks an increase in alimony for reasons other than that she is in danger of becoming a public charge (Gardner v Gardner, 40 AD2d 153, 155, affd 33 NY2d 899; Hauss v Hauss, 47 AD2d 809; Eisen v Eisen, 48 AD2d 652, 653; but, see, Apkarian v Apkarian, 39 AD2d 609).”
The respondent argues that the Goldman and McMains decisions regarding the court’s power to modify the alimony terms of a divorce judgment, which incorporates but does not merge therein the provisions of a prior agreement, applies to section 248.
The Court of Appeals, in its decision in Goldman, reaffirmed the holding in Galusha but distinguished between the contractual obligation resulting from a separation agreement and the obligation statutorily imposed on the court to award support "as justice requires”. The statutes that the court referred to in Goldman were the former sections 1155 and 1170 of the Civil *806 Practice Act, now section 236 of the Domestic Relations Law. The court’s decision to decrease the support payments for his ex-wife was based upon a finding that there was a substantial decrease in his income.
In McMains, the Court of Appeals, faced with an ex-wife who was destitute, in poor health, and unable to work, further refined the holding in Goldman, by increasing the amount of support set forth in the separation agreement. The court based its opinion on section 236 of the Domestic Relations Law and section 5-311 of the General Obligations Law and concluded that the divorce judgment terms may be modified in the event of real, dire need although the agreement itself was unassailable.
The Court of Appeals has not addressed itself to the question of whether the dichotomy of support rights and obligations should be extended to section 248. The closest that court came to resolving the issue was in its memorandum decision, Leffler v Leffler (40 NY2d 1036) in which it unanimously affirmed, on the majority opinion written by Justice Vincent A. Lupiano at the Appellate Division (50 AD2d 93).
In the LelHer case, the husband sought a declaration that he was not obligated to pay alimony to his former wife pursuant to a written separation agreement which provided that the husband would pay alimony to the wife during her life until she remarried. Thereafter plaintiff obtained a Mexican divorce decree, in which the terms of the separation agreement were incorporated but not merged. He alleged that she was living with another man, although not married to him, and that therefore her motion for summary judgment on her counterclaim for alimony arrears should be denied, pursuant to section 248.
Judge Lupiano, writing for the majority, stated: "Patently, this provision, by its terms applies to judgments and orders of support. To construe it as applicable to separation agreements would constitute a legislative act which the court may not engage in. Similarly, in viewing the statute as enunciating a policy not to allow "double support”, the court may not impair the contract freely entered into by the parties. No assertion of fraud or mistake attendant upon the execution of the separation agreement is made. So long as a separation agreement stands unimpeached, the court cannot alter or change a provision for separate maintenance and support of the wife without the consent of both parties (Johnson v Johnson, 206 *807 NY 561; Goldman v Goldman, 282 NY 296). Obviously, where the separation agreement is impeached, the court under appropriate circumstances is justified in reforming the contract so as to make it conform to the agreement actually made and intended. However, absent such impeachment, there is no authority for the court to cancel a contract made by the parties and in its place substitute one which it thinks proper but which as a matter of fact the parties had never assented to. In Levine v Levine (79 Misc 2d 149), the Supreme Court, Kings County (Hirsch, J.) enunciated its view that section 248 of the Domestic Relations Law inferentially supports the striking of the provision for alimony in a separation agreement because the wife was living openly with another man. Such view is incorrect for to so hold, in the absence of the agreement being impeached, would result in substituting the decision of the court for the agreement of the parties as to the amount of allowance, thus making a new agreement in the place of the one adopted by the parties (Stoddard v Stoddard, 227 NY 12). The agreement is binding upon the parties unless and until it is set aside (Nusbaum v Nusbaum, 280 App Div 315).
"Under these circumstances this court has no power to abrogate the support terms of the separation agreement which provide for the cessation of alimony upon the remarriage of the wife. As this has not even been alleged to have occurred, the defendant is entitled to the payments provided for in the agreement.”
The Court of Appeals in affirming Leíñer, based upon the majority opinion, has reaffirmed the sanctity of a contract as enunciated in Galusha (supra, pp 646-647) "The law looks favorably upon and encourages settlements made outside of courts between parties to a controversy. If, as in this case, the parties have legal capacity to contract, the subject of settlement is lawful and the contract without fraud or duress is properly and voluntarily executed, the court will not interfere. To hold otherwise would be not only to establish a rule in violation of well-settled principles, but in effect, it would enable the court to disregard entirely settlements of this character. For, if the court can decree that the husband must pay more than the parties have agreed upon, it is difficult to see any reason why it may not adjudge that the sum stipulated is in excess of the wife’s requirements and decree that the husband contribute a smaller amount.”
*808 However, the Leíñer decision does not finally resolve the issue because that case involves a suit under a contract in reliance upon section 248. The respondent argues that Leíñer in no way carves out an exception to the Goldman decision, but on the contrary, supports it. He points out that the Appellate Court in Leffler (supra, p 96) stated that the husband "is entitled to trial of the issue raised by the pleadings delineated above as it relates to the foreign decree of divorce.” He interprets that to illustrate that the court sent the case back for trial on the issue of whether the requisites of section 248 might be satisfied for the purpose of modifying the judgment. This court finds nothing contained in the Leíñer decision which in any manner limits a finding by the trial court to section 248.
The present conflict in the law between the desire of our courts to encourage the voluntary settlement of matrimonial matters while at the same time recognizing the problems created by the changing circumstances of life has resulted in a state of confusion in our case law. In both Goldman and McMains, the Court of Appeals was faced with serious financial change of circumstances that the parties could not anticipate when they first entered into a separation agreement. Justice required that they grant relief under those circumstances while at the same time preserving the contracturai rights of the parties. It is interesting to note that the courts have refused, in matrimonial matters, to modify a separation agreement where the former wife seeks an increase in alimony unless she is in danger of becoming a public charge (Gardner v Gardner, 40 AD2d 153, affd 33 NY2d 899; Hauss v Hauss, 47 AD2d 809; Eisen v Eisen, 48 AD2d 652). Thus it becomes apparent that our courts have been selective in determining under what circumstances it should grant relief which differs from the terms of a separation agreement. The court finds no justification in applying section 248 to modify a separation agreement because that statute stems from moral principles rather than financial considerations.
Section 248 (formerly Civ Prac Act, § 1159) was adopted in 1938. Primarily it was adopted to remedy the decision of the Court of Appeals in Hayes v Hayes (220 NY 596) where, in answer to a certified question, replied that fornication or an immoral course of living after she obtained a divorce, was not a basis for termination of the former wife’s alimony. The Legislature, in adopting section 248, limited its application to *809 a modification of "final judgment or any orders with respect thereto.” Logic and justice requires that a court may modify its own final judgment or orders regarding future payments of alimony because it normally does not consider or determine under what conditions alimony would terminate. The contrary is true when parties negotiate and arrive at a separation agreement in which they state the terms and conditions when alimony shall terminate. It is the court’s opinion that the Legislature intended, and justice requires, that section 248 shall not apply to any separation agreement which stands unimpeached and survives a judgment of divorce, regardless of whether the suit is brought on the contract or in a matrimonial action. The court finds that the herein separation agreement stands unimpeached.
There is no justification, under section 248, to grant relief to a former husband who entered into a separation agreement in which he agreed to pay alimony until his former wife remarried or died. If he intended to have the alimony terminate if she lived with a man to whom she was not married, he should not enter into an agreement which did not so provide. In the event a financial change of circumstances results from her relationship, he can seek relief under section 236 of the Domestic Relations Law or section 466 of the Family Court Act.
In this day, when the courts are striving to eliminate discrimination between the sexes, section 248 is a step backward to the dark ages. The statute provides "that the court in its discretion upon application of the husband” may modify a final judgment. Relief is, therefore, limited to the husband, at the expense of the wife. Although she has become a divorced person, she may be penalized for her sexual activities while no penalty is imposed upon the former husband if he participates in similar sexual activities. Furthermore, the statute and case law make it safer for a divorced woman to avoid the punitive effect of section 248 by playing the field with different men for short periods of time (see Watson v Watson, 39 AD2d 660). On the other hand, if she resides with one man for a continuous period of time in a relationship that can reasonably be regarded as a husband and wife relationship, she does so at her economic peril.
In view of the present broad discretionary powers granted to the court in section 236 of the Domestic Relations Law, the court questions the need to retain section 248. The court now *810 has the power, under section 236, upon application of either the husband or the wife, to annul or modify an order or final judgment based upon the economic circumstances of the case and of the respective parties as justice require^. The court is in full agreement with Judge Levine, when he stated the following in Hall v Hall (82 Misc 2d 814, 816) "Indeed, had the predecessor to section 236 vested such broad discretionary power in the court, the necessity for a specific statutory provision to deal with the situation of the ex-wife living with another man and holding herself out as his wife is questionable.”
For the above-stated reasons, the court concludes that section 248 may not alter the terms or conditions of a separation agreement which stands unimpeached and survives a judgment of divorce, regardless of whether the suit is brought on the contract or in a matrimonial action.
SHOULD THE COURT EXERCISE ITS DISCRETION UNDER SECTION 248
Both parties have indicated to the court their intention to appeal this case depending upon how the court’s decision affected them. Therefore, the court has decided, for the sake of judicial expediency, to include in this decision its conclusion in the event the appellate court should determine that the court does have the right to modify pursuant to section 248.
The court has already stated in its herein decision that the prerequisites to apply section 248 have been established. However, the court must now determine whether the herein circumstances warrant the court to exercise its discretion under the statute.
Based upon the testimony and evidence presented during the hearing, the court makes the following findings:
That during the period of time when Carol and Bob were married, she was having sexual relations with Ted, and Bob was having sexual relations with Alice, with the knowledge and consent of all parties;
That prior to the execution of the separation agreement, Bob knew, or any reasonable man would have known, that Carol was living with Ted;
That Carol and Bob and their attorneys had extensive negotiations regarding the desire of Bob to include a provision *811 terminating alimony if she lived with a man to whom she was not married and that he signed the separation agreement without said provision when he became convinced she would not execute an agreement containing such a condition;
That Bob was fully aware of section 248 when he signed the separation agreement. He intended to get his divorce, and then utilize that statute to change the terms of the agreement;
That Carol would not have entered into a separation agreement if it contained a provision terminating her alimony if she lived with a man to whom she was not married.
That Carol did not recieve "double support”;
That Bob, based upon the fact that the parties before the separation agreement was signed, "switched” partners, admits that he expected his former wife Carol, to continue to have sexual relations with Ted.
Based upon the above findings of fact, the court refuses to exercise its discretion pursuant to section 248. To grant his requested relief, under all of the herein circumstances, would be a travesty of justice.
CONCLUSION AND DECISION
The court concludes that:
(1) There was a "holding out” as contemplated by section 248 of the Domestic Relations Law.
(2) The court may not, pursuant to section 248, alter the terms or conditions of a separation agreement which stands unimpeached and survives a judgment of divorce, regardless of whether the suit is brought on the contract or in a matrimonial matter.
(3) If the court has the authority under section 248, it would not exercise its discretion under the circumstances of this case.
The court, therefore, grants the petitioner’s petition to enforce another court’s order and denies the respondent’s cross petition to eliminate alimony payments and cancel accrued alimony arrears. This decision is granted without prejudice for respondent to pursue his remedy outside of section 248.